**UNITED STATES of America,**
**Appellee,**

v.

**Marc Paul EDELMAN, Roy Lisker, and Thomas Charles Cornell, Defendants-Appellants.**

**Nos. 524–526, Dockets 31035–31037.**

United States Court of Appeals
Second Circuit.

Argued June 26, 1967.

Decided July 18, 1967.

Marvin M. Karpatkin, New York City (Alan H. Levine, Henry M. diSuvero, Neal Johnston, Burt Neuborne, New York City, on the brief), for appellants.

Peter Fleming, Jr., Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, John Sprizzo, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD and MOORE, Circuit Judges, and WEINFELD,* District Judge.

MOORE, Circuit Judge:

Appellants Thomas C. Cornell, Marc Paul Edelman and Roy Lisker were separately indicted for their knowing destruction and mutilation of Selective Service System certificates in violation of 50 U.S.C.App. § 462(b) (3). Cornell was charged with destroying both his Registration Certificate and his Notice of Classification. Edelman and Lisker were charged with destroying only their Registration Certificates. Appellants had burned these forms at a well-publicized rally in Union Square, New York City, on November 6, 1965 under the sponsorship of the Committee for Non-Violent Action. Prior to the destruction of his certificate, each appellant made a statement to the effect that he was performing the act to protest the war in Vietnam as well as the law prohibiting draft card burning. Another man also burned his draft card, but was not indicted as he was over 36 and no longer subject to call for military duty, although the Government contends that one of the reasons for not indicting him was a lack of evidence.

Appellants were tried before Judge Murphy, sitting without a jury, found guilty, sentenced to six-month prison terms and released pending this appeal.

50 U.S.C.App. § 462(b)(3) was amended in 1965 to make one who "knowingly destroys, [or] knowingly mutilates" a Selective Service System certificate guilty of a felony. The amendment was largely superfluous in terms of effectively operating the Selective Service System, as under regulations passed pursuant to 50 U.S.C.App. § 462(b)(6) it already was a crime to be without possession of either one's Registration Certificate or Notice of Classification. See United States v. Kime, 188 F.2d 677 (7th Cir.), cert. denied, 342 U.S. 823, 72 S.Ct. 41, 96 L.Ed. 622 (1951).

The constitutionality of the draft card burning amendment came before this Court in United States v. Miller, 367 F.2d 72 (2d Cir. 1966), cert. denied, 386 U.S. 911, 87 S.Ct. 855, 17 L.Ed.2d 787 (1967).[1] In a comprehensive opinion, Judge Feinberg considered each of the constitutional points raised by Miller and rejected them, affirming Miller's conviction. To the argument that the congressional motive in passing the amendment was an impermissible one (suppressing dissent on Vietnam) even though the statute was innocuous on its face, Judge Feinberg answered that in most cases, including Miller, it was inappropriate for a court to go behind the terms of a statute to divine the collective legislative motive for its enactment, noting only that, at any rate, it was not completely clear what the congressional mo-

---

* Of the Southern District of New York, sitting by designation.

1. The Supreme Court denied Miller's petition for certiorari on February 13, 1967. On April 10th, the First Circuit handed down the O'Brien case, discussed infra. By then, Miller's time to petition the Supreme Court for rehearing had expired, but he has now moved the Supreme Court for permission to apply for a rehearing in the light of O'Brien. No action on this motion has yet been taken by the Court.

tive had been as one Committee Report expressed a concern that destruction of draft cards "represents a potential threat to the exercise of the power to raise and support armies."[2]

With respect to Miller's argument that the draft card burning law constituted an improper interference with the exercise of free speech, Judge Feinberg applied a careful balancing test, see American Communications Ass'n, CIO v. Douds, 339 U.S. 382, 399, 70 S.Ct. 674, 94 L.Ed. 925 (1950), and concluded that the public interest in supporting an effective Selective Service System through prohibiting the destruction of draft cards outweighed the impairment of Miller's freedom of speech within the meaning of the First Amendment (assuming, without deciding, that the symbolic gesture of burning a draft card was an exercise of "speech").

Subsequent to this Court's decision in Miller, the First Circuit reached the opposite result and held that the 1965 amendment was unconstitutional. O'Brien v. United States, 376 F.2d 538 (1st Cir. 1967) (O'Brien's conviction was affirmed, however, on the grounds that the charge that he had burned his draft card (Registration Certificate), the fact of which was proven at his trial, implicitly included a charge that he was not in possession of his draft card—illegal under the old law).[3] The First Circuit held that since wilful nonpossession of Selective Service certificates was already punishable, the 1965 amendment prohibiting their destruction or mutilation "was precisely directed at public as distinguished from private destruction," because a prosecution could be brought under the amendment only when there was a witness to the destruction or mutilation.

Appellants attempt to distinguish Miller on two grounds. First, they point out that Miller burned his Notice of Classification while they burned only their Registration Certificates (except Cornell who burned both), a far less important document, so they say, although it contains important information which does not appear on the Notice of Classification. The argument goes that at a time of national emergency, the only card really needed for speedy processing of potential soldiers is the Notice of Classification—the Registration Certificate having very little additional information on it. Appellants urge that applying Judge Feinberg's balancing test to Registration Certificates must yield a different result than applying it to Notices of Classification. The second distinguishing fact in Miller is that Miller was classified 1-A whereas Cornell was classified 1-O, and Edelman and Lisker were classified 4-F. This again is said to affect the balancing test as the Selective Service System's need to keep track of Miller, subject to immediate call, is greater than the System's need to keep track of appellants who are not subject to call.

Appellants' attempts to distinguish Miller are not convincing. It would be most arbitrary to rule that the amendment was constitutional with respect to one document but not with respect to another. As regards the second distinction, the Selective Service System might be just as interested in knowing who is not subject to call at a time of emergency as it would be in knowing who is subject to call.

---

**2.** S.Rep. No. 589, 89th Cong., 1st Sess. (1965).

**3.** On petition for rehearing to the First Circuit, O'Brien urged that the proof at his trial, while establishing that he had burned his Registration Certificate, did not necessarily establish that he had been guilty of non-possession as there was no proof (1) that he had burned the entire card, and (2) that he had not obtained a duplicate card prior to the burning.

The First Circuit rejected these contentions on the merits after reviewing the proof introduced at the trial. 376 F.2d at 542–543.

The Government has filed a petition for certiorari in the Supreme Court, 389 U.S. 814, 88 S.Ct. 61, 19 L.Ed.2d 65, and O'Brien has apparently cross-petitioned for certiorari contesting the propriety of his conviction for the lesser included offense.

Finally, appellants argue that *Miller* was incorrectly decided and should be overruled in the light of *O'Brien*. We do not find the reasoning of *O'Brien* persuasive. In the first place, its premise is wrong; the amendment on its face forbids private destruction or destruction in the presence of one other individual just as it does destruction at a public meeting of protest. If, for example, private destruction was admitted, or shown by the testimony of one who witnessed it without the knowledge of the destroyer, the amendment would authorize a conviction. In the second place, we find no authority for the First Circuit's implicit assumption that Congress cannot seek to meet a single substantive evil, obstruction of the Selective Service System by nonpossession of certificates, by two or more measures which overlap to some extent.

Affirmed.