**David Paul O'BRIEN, Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 6813.**

United States Court of Appeals First Circuit.

Heard March 8, 1967.

Decided April 10, 1967.

Rehearing Denied April 28, 1967.

Marvin M. Karpatkin, New York City, with whom Howard S. Whiteside, Boston, Mass., Melvin L. Wulf, New York City, Henry P. Monaghan, Boston, Mass., and Eleanor Holmes Norton, New York City, were on brief, for appellant.

John Wall, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

The defendant was indicted on the charge that he "willfully and knowingly did mutilate, destroy and change by burning * * * [his] Registration Certificate (Selective Service System Form No. 2); in violation of Title 50, App. United States Code, Section 462(b)." Section 462(b) is composed of six numbered subsections, none of which was identified except as above. The following provisions are here pertinent.

"(3) who forges, alters, *knowingly destroys, knowingly mutilates,*[1] or in any manner changes any such certificate * * *."

1. The italics are ours. See infra, fn. 4.

"(6) who knowingly violates or evades any of the provisions of this title (said sections) [451–454, 455–471 of this Appendix] or rules and regulations promulgated pursuant thereto relating to the issuance, transfer or possession of such certificate."

A regulation required that possession of a certificate be maintained at all times. 32 C.F.R. § 1617.1. The penalty for violation of all sections listed was a fine, not to exceed $10,000, or imprisonment for not more than five years, or both.

The defendant moved to dismiss the indictment, asserting violation of the First and a number of other amendments. The motion was denied. Thereafter he was tried to a jury. At the trial he conceded that he had burned his certificate, and raised only his constitutional defenses. Upon conviction and sentence [2] he appeals. His position here is that his conduct, publicly done to express his disapproval of the draft and all that it represented, was a lawful exercise of free speech.

Subsection (b) (3) was originally directed to forgery and fraud. In 1965 some young men of the same mind as the defendant engaged in the same conduct, to wit, the public burning of "draft cards," which he has now imitated.[3] The reaction in Congress was plain. Despite the fact that subsection (b) (6) already made it an offense to part with possession of a draft card, Congress made it a separate offense if loss of possession was effected in a particular manner.

The words "knowingly destroys, knowingly mutilates" were added to subsection (b) (3).[4]

■ In upholding the validity of this amendment against the same constitutional attack that is presently made, the court in United States v. Miller, 2 Cir., 1966, 367 F.2d 72, at 77, cert. den. 2/13/67, 386 U.S. 911, 87 S.Ct. 855, 17 L.Ed.2d 787, said:

"what Congress did in 1965 only strengthened what was already a valid obligation of existing law; i. e., prohibiting destruction of a certificate implements the duty of possessing it at all times."

In support of this assertion the court demonstrated the reasonableness of requiring registrants to be in possession of their cards, and with this demonstration we do not quarrel. United States v. Kime, 7 Cir., 1951, 188 F.2d 677, cert. den. 342 U.S. 823, 72 S.Ct. 41, 96 L.Ed. 622. With all respect, however, the existence of prior law requiring registrants to possess their cards at all times does not support the amendment. On the contrary, given that law, we can see no proper purpose to be served by the additional provision prohibiting destruction or mutilation.[5] The legislative history suggests none,[6] and the Second Circuit suggested none in *Miller*. To repeat our metaphor adopted by the Court in Jarecki v. G. D. Searle & Co., 1961, 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859, "If there is a big hole in the fence for the big cat, need there be a small hole for the

---

2. Defendant was sentenced under the Youth Correction Act, 18 U.S.C. § 5010(b) (six years).

3. We are not in a position to say how widespread this behavior became. See Finman & Macaulay, Freedom to Dissent: The Vietnam Protests and the Words of Public Officials. 1966 Wis.L.Rev. 632, 644–53.

4. P.L. 89–152, 79 Stat. 586, Aug. 1965.

5. During argument we inquired whether the pecuniary loss to the government by the destruction of a card might be a basis for the amendment. Defendant replied that the point had never been advanced. We find no statute in any other area mak-

ing such negligible damage a felony. We cannot think that Congress believed the intrinsic value of a draft card to require this protection.

6. We do not rely in this connection on the fact that the legislative history suggests an improper purpose, see infra, but merely note the absence of any proper one. We note, also, that the House Committee on Armed Services conceded that the prior law might "appear broad enough to cover all acts having to do with the mistreatment of draft cards in the possession of individuals." H.Rep.No.747, 89th Cong., 1st Sess., U.S.Code Cong. & Admin.News 1965, p. 2889.

small one?" Cf. Coakley v. Postmaster of Boston, 1 Cir., 3/16/67, 374 F.2d 209.

We see no possible interest, or reason, for passing a statute distinguishing between a registrant obligated to carry a card who mails it back to his draft board, United States v. Kime, supra, and one who puts it in his wastebasket. The significant fact in both of these instances is that he is not carrying it. The distinction appears when the destruction itself is an act of some consequence. It requires but little analysis to see that this occurs when, and only when, the destruction is, as in the case at bar, a witnessed event. We would be closing our eyes in the light of the prior law if we did not see on the face of the amendment that it was precisely directed [7] at public as distinguished from private destruction. In other words, a special offense was committed by persons such as the defendant who made a spectacle of their disobedience.

■ In singling out persons engaging in protest for special treatment the amendment strikes at the very core of what the First Amendment protects. It has long been beyond doubt that symbolic action may be protected speech.[8] Speech is, of course, subject to necessary regulation in the legitimate interests of the community, Kovacs v. Cooper, infra, but statutes that go beyond the protection of those interests to suppress expressions of dissent are insupportable. E. g., Cantwell v. State of Connecticut, 1940, 310 U.S. 296, 307–311, 60 S.Ct. 900, 84 L.Ed. 1213; DeJonge v. State of Oregon, 1937, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278; Terminiello v. City of Chicago, 1949, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131. We so find this one.

■ However, the defendant is not in the clear. In burning his certificate he not only contravened subsection (b) (3), but also subsection (b) (6). He knew this at the time of the burning, for his card summarized both provisions, and he knew it in a larger sense, as is revealed by the memorandum in support of his motion to dismiss, reproduced in his Record Appendix. The memorandum asserted,

> "To rely upon individuals having draft cards in their possession as a means of operative [sic] the selective service system would seem to be impractical if not downright dangerous. * * * Whether Defendant O'Brien has his draft card in his possession, whether he burned, mutilated or whatever, will have little or no effect upon the selective service system."

It is apparent that the factual issue of nonpossession has been fully presented and tried and been found against the defendant. F.R.Crim.P. 31(c) provides, "The 'defendant may be found guilty of an offense necessarily included in the offense charged'. * * *" See United States v. Ciongole, 3 Cir., 1966, 358 F.2d 439. We see no procedural reason why defendant should not stand convicted of this violation of section (b).

■■ Nor do we see any constitutional objection to conviction for nonpossession of a certificate. It is one thing to say that a requirement that has no reasonable basis may impinge upon free speech. Different considerations arise when the statute has a proper purpose and the defendant merely invokes free speech as a reason for breaking it. We would agree, for example, that a provision relating to injury to the Capitol ornaments could not make it a heightened offense if statuary was defaced for the announced purpose of disparaging the individual memorialized. This, essen-

---

7. While we make no attempt to divine the motive of any particular proponent of the legislation, we regard it as significant that the impact on certain expressions of dissent is no mere random accident, but quite obviously the product of design. Cf. Grosjean v. American Press Co., 1936, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660; Gomillion v. Lightfoot, 1960, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110.

8. E. g., West Virginia State Board of Education v. Barnette, 1943, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628; Stromberg v. People of State of California, 1931, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117.

tially, is what subsection (6) has done if its presence has influenced the court in the severity of the sentence, a matter we will come to shortly. However, it could hardly be suggested that free speech permitted defacement of a statute with impunity so long as disparagement was the declared motive. The First Amendment does not give the defendant carte blanche. Cf. Kovacs v. Cooper, 1949, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513; Giboney v. Empire Storage and Ice Co., 1949, 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834.

This leaves us with one reservation. Very possibly, in imposing sentence, the court took into consideration what the statute, by virtue of the amendment, indicated to be aggravating circumstances. Clearly it was an aggravated offense in the eyes of the proponents of the legislation. See remarks of Representative Rivers, Congressional Record, House, August 10, 1965, at 19135. Doubtless, too, the defendant chose his particular conduct precisely because of its "speaking" aspect. For the court to conclude, as was suggested in the legislative report, H.Rep. No. 747, 89th Cong., 1st Sess. 1–2, that the impact of such conduct would impede the war effort, and measure the sentence by the nature of his communication, would be to punish defendant, pro tanto, for exactly what the First Amendment protects. The only punishable conduct was the intentional failure to carry his card.[9]

■ While we do not have, and do not purport to exercise, jurisdiction to review a lawful sentence, we do hold that fairness to the defendant requires that he be resentenced upon considerations affirmatively divorced from impermissible factors. Marano v. United States, 1 Cir., 3/23/1967, 374 F.2d 583. We remark, further, that any future indictments should be laid under subsection (b) (6) of the statute.

*The judgment of conviction is affirmed and the case is remanded to the District Court to vacate the sentence, and to resentence as it may deem appropriate in the light of this opinion.*

## ON PETITION FOR REHEARING

Defendant's petition for rehearing makes, essentially, five points.

1. If one designated offense is constitutionally protected, there cannot be an included offense. Defendant cites but one case to support this contention. If it is pertinent at all, it is contrary to his position.

■ 2. The petition at least implies that different consideration should be given to the defendant because he refused counsel in the district court. The court was, properly, most solicitous of the defendant, but it is unheard of that different legal principles became applicable because he chose to represent himself.

■ 3. A distinction should be made between S.S.S. Form 110 (Notice of Classification) and S.S.S. Form 2 (Registration Certificate). Defendant suggests no reason for drawing a distinction, and we can think of none.

4. The "burning" of a card might leave enough card extant so that one still "possessed" the card, and 5. Defendant might have possessed a duplicate card. We might agree with defendant that, for either of these reasons, a burning in some circumstances would not violate the possession requirement. In the present case defendant was convicted under a charge that he did wilfully "mutilate, destroy and change * * *" his card. The conviction was fully supported. The government witnesses described the "charred remains" of the card as a "fragment." Defendant, who was fully advised of his Fifth and Sixth Amendment rights, acknowledged to the witnesses that he had burned "his" card, and permitted the fragment to be photographed. At trial he conceded the photograph's admissibility and "obvious" au-

---

9. We do not, of course, suggest that if the defendant was urging others to burn their own cards this would have been protected speech. However, we do not understand the government to make this charge.

thenticity. We note, but without approval, defendant's present argument that he would still "possess" a card if it was "cut * * * in ten pieces." The photograph reveals a substantially incomplete card. Manifestly defendant no longer "possessed" that card.

Nor did defendant's own position permit the suggestion that what was burned was a duplicate of a card still in his possession. Defendant himself introduced and read to the jury his statement to his draft board that he could not "in good conscience carry what is called a draft card." Afterwards the court offered him probation if he would apply for and carry a card but he replied, "I couldn't in good conscience do that," and chose confinement instead. We will not, on such a record, grant rehearing to consider whether defendant was carrying a proper draft card in his possession.

Petition denied.