Chief Judge Fuld.
We are called upon to decide whether the deliberate act of burning an American flag in public as a 1 ‘ protest ’ ’ may be punished as a crime.
On June 6, 1966, after hearing on the radio that James Meredith, the civil rights leader, had been shot by a sniper in Mississippi while participating in a civil rights ‘ ‘ march ’ ’, the defendant — a decorated World War II veteran — decided to express his indignation and publicly to protest the tragic happening by burning an American flag. Owning two — one with 50 stars, the other with 48 — he selected the latter and burned it on a street corner, telling the small crowd which collected that “ [i]f they let that happen to Meredith we don’t need an American flag.” The defendant was arrested, tried and convicted for violating the provision of the Penal Law (§ 1425, subd. 16, par', d) which makes it a misdemeanor to “ publicly mutilate ” the United States flag.[1] He was acquitted of a second charge of disorderly conduct and given a suspended sentence.
There is no doubt that “ nonverbal expression ” may be “ a form of speech ’ ’ within the meaning and protection of the First and Fourteenth Amendments. (People v. Stover, 12 N Y 2d 462, 469, opp. dsmd. 375 U. S. 42; see Brown v. Louisiana, 383 U. S. 131, 142 [sit-in]; Carlson v. California, 310 U. S. 106, 112 [picketing]; Stromberg v. California, 283 U. S. 359 [display of red flag]; cf. Board of Educ. v. Barnette, 319 U. S. 624 [flag salute].) However, this does not mean that “the same kind of freedom [is afforded] to those who would communicate ideas by conduct * * * as these amendments afford to those who communicate ideas by pure speech.” (Cox v. Louisiana, 379 U. S. 536, 555.) The State may, under its police powers, proscribe many forms of conduct which threaten the peace, security or well-being of its inhabitants, and the Constitution does not require that an exception be made for prohibited activities to which some persons would ascribe *235 symbolic significance. (See People v. Stover, 12 N Y 2d 462, opp. dsmd. 375 U. S. 42, supra; People v. Martin, 15 N Y 2d 933, cert. den. 382 U. S. 828; People v. Penn, 16 N Y 2d 581, cert. den. 383 U. S. 969.) Thus, rejecting arguments by defendants that their protest demonstrations were protected by the First Amendment, the courts have, in recent years, upheld convictions for (1) violation of a zoning ordinance (see People v. Stover, 12 N Y 2d 462, opp. dsmd. 375 U. S. 42, supra); (2) disorderly conduct (see, e.g., People v. Martin, 15 N Y 2d 933, cert. den. 382 U. S. 828, supra; People v. Penn, 16 N Y 2d 581, cert. den. 383 U. S. 969, supra); (3) trespass (see Adderley v. Florida, 385 U. S. 39); (4) failure to retain possession of a draft card (see O’Brien v. United States, 376 F. 2d 538 [1st Cir.]; cf. United States v. Miller, 367 F. 2d 72, cert. den. 386 U. S. 911); and (5) deliberate disregard of an order closing a river to navigation. (See United States v. Aarons, 310 F. 2d 341.) As the Supreme Court observed in the Adderley case (385 U. S. 39, 48, supra), freedom of expression does not license individuals to speak ‘ whenever and however and wherever they please”. (See, also, Walker v. City of Birmingham, 388 U. S. 307; Kovacs v. Cooper, 336 U. S. 77.)
It is the teaching of the cases that the constitutional guarantee of free speech covers the substance rather than the form of communication and that the right to employ a particular mode of expression will be vindicated only if it has been outlawed, not because of any legitimate State interest, but solely for the purpose of censoring the underlying idea or thought. (See, e.g., Brown v. Louisiana, 383 U. S. 131, supra; Cox v. Louisiana, 379 U. S. 536, supra; Carlson v. California, 310 U. S. 106, supra; Thornhill v. Alabama, 310 U. S. 88, 101-106; Stromberg v. California, 283 U. S. 359, supra; O’Brien v. United States, 376 F. 2d 538, supra; but cf. United States v. Miller, 367 F. 2d 72, cert. den. 386 U. S. 911, supra.) On the other hand, if the State can show that the prohibition of certain conduct is designed to promote the public health, safety or well-being, then, “ the circumstance that such prohibition has an impact on speech or expression ” does not render the legislation violative of the First Amendment (People v. Stover, 12 N Y 2d, at p. 469) providing, of course, that other channels of communication are *236 open and available. (Compare Kovacs v. Cooper, 336 U. S. 77, 89, supra, with Bakery Drivers Local v. Wohl, 315 U. S. 769, 775.)[2]
For many years now, public desecration of the American flag has been a criminal offense in all of the States. (See “ Desecration of the Flag ”, Hearings on H. R 271 Before Subcommittee No. 4 of House Committee on Judiciary, 90th Cong., 1st Sess. [Serial No. 4], pp. 32-R346.) There is, in fact, a Uniform Flag-Law (9B Uniform Laws Annotated [1966], pp. 51-54), closely resembling subdivision 16 of section 1425 of our Penal Law, which has been adopted by more than a dozen States. This sort of legislation was enacted, it has been said, as a reaction to the unseemly practice, adopted in the 1896 presidential campaign, of affixing political slogans to the flag. (See 9B Uniform Laws Annotated [1966], p. 48.) In any event, whatever motivated the Legislature to act, the statutory purpose is clear — it is to prevent a breach of the peace. (See People ex rel. McPike v. Van de Carr, 91 App. Div. 20, 26, affd. 178 N. Y. 425; Halter v. Nebraska, 205 U. S. 34, 41; People v. Von Rosen, 13 Ill. 2d 68, 70-71.) As the Supreme Court noted in the Halter case (205 U. S. 34, 41, supra), “ insults to a flag have been the cause of war, and indignities put upon it, in the presence of those who revere it, have often been resented and sometimes punished on the spot.” Subdivision 16 of section 1425 is designed to prevent the outbreak of such violence by discouraging contemptuous and insulting treatment of the flag in public. Hhppily, the courts ■have not been called upon to apply the statute, or others like it, with any degree of frequency. In People v. Picking (288 N. Y. 644), we'sustained a conviction under subdivision 16 for exploitation of the American flag in commercial advertising (see, also, Halter v. Nebraska, 205 U. S. 34, supra) and other jurisdictions have, on occasion, similarly punished such disrespectful conduct as publicly tearing" a flag or throwing it to the ground. (See Hintons. State, 223 Ga. 174; State v. Schlueter, 127 N. J. L. 496.)
*237 We need not at this time concern ourselves with a display of the flag in a manner which does not clearly manifest an intention to desecrate it. (Compare State v. Kent, Hawaii 1st Cir. Ct., No. 36423, decided Dec. 9, 1966, with People v. Radich, 53 Misc 2d 717, and United States Flag Foundation v. Radich, 53 Misc 2d 597.)[3] In the case before us, the defendant concededly burned the flag in public, not for the purpose of destroying it “in a dignified way ” (U. S. Code, tit. 36, § 176, subd. [j]) but rather to express his indignation and sense of outrage.[4] It was an act of incitement, literally and figuratively ‘ incendiary ’ ’ and' as fraught with danger to the public peace as if he had stood on the street corner shouting epithets at passing pedestrians. (See Chaplinsky v. New Hampshire, 315 U. S. 568.) The State may legitimately curb such activities in the interest of preventing violence and. maintaining public order. (See People v. Penn, 16 N Y 2d 581, cert. den.. 383 U. S. 969, supra; Chaplinsky v. New Hampshire, 315 N. Y. 568, supra; Drivers Union v. Meadowmoor Co., 312 U. S. 287, 294; Carlson v. California, 310 U. S. 106, 113, supra; Halter v. Nebraska, 205 U. S. 34, supra; cf. Brown v. Louisiana, 383 U. S. 131, 139, supra; Garner v. Louisiana, 368 U. S. 157, 173-174.)
The violation of the statute may not be condoned simply because the defendant’s agitation resulted from the distressing news he had heard on the radio or because no violence actually did occur as a result of the flag burning. These were mitigating circumstances which were properly taken into account by the trial court when it suspended sentence for the conviction. Moreover, since the act in question was specifically prohibited by a statute (Penal Law, § 1425, subd. 16) and the defendant could be punished only once for having engaged in such conduct (Penal Law, § 1938), the court did not render an inconsistent *238 verdict when it dismissed the more general charge oí disorderly conduct.
The judgment of conviction should be affirmed.
Judges Van Voorhis, Burke, Scileppi, Bergan, Keating and Breitel concur.
Judgment affirmed.

. Although paragraph d of subdivision 10 dons not mention the word “ flag ”, no one could possibly be mislead as to the object of its coverage since it is perfectly evident, from a reading of the subdivision in its entirety, that the provision was meant to apply to public mutilation of the American flag. (Compare L. 1921, ch. 428 with L. 1922, ch. 270.)

. The First Amendment does not invalidate a statute prohibiting certain bizarre conduct even if the need for restrictive legislation was not fully appreciated until after someone had utilized that form of conduct as a means of social or political protest. (See People v. Stover, 12 N Y 2d, at p. 466.)

. The statute, by its terms, does not apply to any use of the flag “ expressly permitted ” under Federal law or to any representation of the flag, apart from advertising, upon documents, pictures, jewelry, stationary, newspapers or magazines.

. On oral argument before our court, the defendant disclaimed any reliance on the fact that the flag in question was obsolete, containing but 48 stars. Indeed, we note that the statute defines an American flag as one “ upon which shall be shown ■* * * the stars, and the stripes, in any number of either thereof ”.