**UNITED STATES of America,
Plaintiff,**

v.

**Mendel L. COOPER, Defendant.**

**Crim. A. No. 67–CR–203.**

United States District Court
D. Colorado.

Feb. 14, 1968.

Lawrence M. Henry, U. S. Atty., for the District of Colorado; Milton C. Branch, Asst. U. S. Atty., Denver, Colo., for the United States.

Walter L. Gerash, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

The indictment herein charges willful and knowing mutilation by burning of a draft card contrary to 50 U.S.C.App. § 462(b) (3). The second count charges that on the same day defendant willfully and knowingly failed and refused to possess a draft card contrary to the same section.

The defendant has filed numerous motions (a total of 21) to dismiss the indictment. Motions 14 through 21 allege that the indictment is contrary to various provisions of the rules of land warfare and international law. These motions have been denied from the bench. Motions 1 through 13 allege various infringements of the First Amendment and also of the Fifth Amendment, but basically they assert that the act of Congress is an invalid invasion of the defendant's constitutional right of free expression.

The defendant has also moved for a continuance on the ground that the United States Court of Appeals for the First Circuit, 376 F.2d 538, has ruled that the so-called draft card burning statute is unconstitutional; that the matter has been appealed to the Supreme Court and that certiorari has been granted by the Supreme Court, 389 U.S. 814, 88 S.Ct. 61, 19 L.Ed.2d 65; and that this present cause should not be determined until the Supreme Court has ruled. This motion has been denied also.

The statute in question in Count 1 reads as follows:

"Any person * * * who forges, alters, *knowingly destroys, knowingly mutilates,* or in any manner changes any such certificate or any notation duly and validly inscribed thereon * * * shall, upon conviction, be fined not to exceed $10,000 or be imprisoned for not more than five years, or both." [The italicized portions were added in August 1965, and it is this amendment which is now under attack.]

The question for decision is therefore whether the First Amendment guarantees of freedom of speech and expression are violated by this effort on the part of the Congress to prohibit the knowing destruction and knowing mutilation of a Selective Service certificate. The defendant does not dispute the fact that his draft card was burned in connection with a public demonstration. Indeed, we are told that the charred remains were delivered to government officials so as to dispel all question as to whether the accused had perpetrated the prohibited acts.

■ There is no question but that nonverbal expression may be considered a form of speech and may in certain instances be protected by the First Amendment. See, e. g., Brown v. State of Louisiana, 383 U.S. 131, 142, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966) (sit-in); Carlson v. People of State of California, 310 U.S. 106, 112, 60 S.Ct. 746, 747, 84 L.Ed. 1104 (1940) (involving picketing); Stromberg v. People of State of California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) (having to do with the display of a red flag); People of State of New York v. Street, 20 N.Y.2d 231, 282 N.Y.S.2d 491, 229 N.E.2d 187 (1967) (a flag burning case in which the statute was upheld on the basis that it was designed to prevent breaches of the peace which accompany desecration of the American Flag).

Conduct is or can be expression, but this is not to say that it is always entitled to the same protection as speech. Thus, in Cox v. State of Louisiana, 379 U.S. 536, 555, 85 S.Ct. 453, 464, 13 L.Ed. 2d 471 (1965), the Supreme Court distinguished between conduct and speech, saying:

"We emphatically reject the notion urged by appellant that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct such as patrolling, marching, and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech.

* * * We reaffirm the statement of the Court in Giboney v. Empire Storage & Ice Co., supra [336 U.S. 490] at 502 [69 S.Ct. 684, at 691, 93 L.Ed. 834], that 'it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'"

There are three decided cases on the point. In addition to the decision of the First Circuit, which has been mentioned, O'Brien v. United States, 376 F.2d 538, cert. granted, 389 U.S. 814, 88 S.Ct. 61, 19 L.Ed.2d 65 (1967) holding the statutory provision invalid, the Second Circuit has upheld the provision in United States v. Miller, 367 F.2d 72, cert. den., 386 U.S. 911, 87 S.Ct. 855, 17 L.Ed.2d 787 (1966). The Eighth Circuit has also upheld the amendment in Smith v. United States, 368 F.2d 529 (1966).

In O'Brien the Court speaking through Chief Judge Aldrich noted that the existing statute had covered and included the offense of mutilation and, thus, that it was unnecessary to specify. From this the Court concluded that there existed no proper legislative purpose and, thus, the Congress had singled out persons engaged in protest "for special treatment." In so doing the Court concluded the effort "strikes at the very core of what the First Amendment protects."

On the other hand, the Second Circuit Court of Appeals in Miller reached the opposite conclusion, ruling that the amendment was not unconstitutional on its face; that Congress had power to enact it pursuant to Article I, section 8 since it concerned the administration of the draft; that the legislative history was inconclusive, noting that the more authoritative congressional reports showed a concern that the destruction of draft cards represented a potential threat to the exercise of the power to raise and support armies. The Court further noted that the act did not discriminate between symbolic and non-symbolic card burnings and was thus not discriminatory. Final-

ly, it was reasoned that this was merely an implementation and strengthening of a statute which had from the first required the possession of the draft certificate, which provision had been in effect for many years and had been upheld. United States v. Kime, 188 F.2d 677 (7th Cir.), cert. den., 342 U.S. 823, 72 S.Ct. 41, 96 L.Ed. 622 (1951). The *Smith* case followed the decision in *Miller* and further noted that there was not a violation of the Eighth Amendment, and that the contention that the statute provided cruel and unusual punishment was without merit.

■ We are of the opinion also that it was valid for the Congress to implement and clarify the instant statute by specifically describing and defining the particular offense. In reaching this conclusion, we have considered the legislative history. Although there are some spirited comments by some members of Congress, we do not consider that this undermines the basic authority of the Congress to impose reasonable regulation and restriction on disposition of draft cards in the interest of orderly administration of the Selective Service program. In this connection we are impressed by the fact that it is not a severe restriction of freedom of speech. The right to vigorous dissent remains inviolate. The prohibited acts call for very slight sacrifice on the part of the protesters and, unquestionably, there is a public interest in not only maintaining the cards but preventing demonstrations which the Congress could well have regarded as immature, undignified, contemptuous and disruptive. We do not consider the latter findings necessary legislative objects.

■ Nor do we see merit in the demand that the clear and present danger test be applied. Rather, in this conduct case, the proper test would appear to be that of balancing the conflicting interests. See American Communications Assn., CIO v. Douds, 339 U.S. 382, 399,

70 S.Ct. 674, 94 L.Ed. 925 (1940). And as we view it, delicate balancing is not called for. The defendant is not simply asking for freedom of speech, but rather seeks to destroy government administrative documents as a symbol of dissent. The object he seeks to advance, namely freedom of expression, is curtailed only slightly. The statute does not seek to quiet him. It merely prohibits the destruction of government documents, a not unreasonable demand.

A recent decision of the Supreme Court of the United States shows quite clearly that the government need not, in the interest of free expression, tolerate property trespasses, and the instant case does involve an act which is in essence a trespass. We refer to Adderley v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). In that case the Supreme Court through Mr. Justice Black declared:

"The State, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated." 87 S.Ct. at 247.

The dissenting judges in *Adderley* conceded that there may be some public places which are so committed to other purposes that their use for the airing of grievances would be anomalous.

In the case at bar the Congress has clearly committed the draft certificate to an administrative purpose, and it follows that the destruction of the document contravenes as an overall Selective Service purpose and constitutes a trespass which the Congress can validly prohibit. The value of the interest advanced by the legislation far outweighs the relative insignificant curtailment of freedom of the accused.

■ The amendment is not invalid on its face and is not unconstitutional as applied to the facts which have been presented.

Motions 1 through 13 are denied.