Wendell HOWELL, Defendant, Appellant,

v.

STATE of Delaware, Plaintiff, Appellee.

Supreme Court of Delaware.

Submitted May 13, 1980.

Decided Sept. 17, 1980.

Bertram S. Halberstadt (argued), of Biggs & Battaglia, Wilmington, for defendant, appellant.

Charles M. Oberly, III, Asst. State Prosecutor (argued), Wilmington, for plaintiff, appellee.

Ernest S. Wilson, Jr., and John Trager, amicus curiae, of Wilson & Whittington, P.A., Wilmington, for American Civil Liberties Union–Delaware.

894

Before HERRMANN, C. J., DUFFY and HORSEY, JJ.

HORSEY, Justice:

In this criminal appeal the defendant, Wendell Howell, seeks to set aside the judgment and sentences of the Superior Court based on his entry of "Robinson" pleas of guilt [1] to two courts of official misconduct in violation of 11 *Del.C.* § 1211(2).[2] The judgment and sentences arose from defendant's unreasonable delay in reimbursing the Wilmington School District for materials furnished and labor performed on defendant's home by School Board employees during their paid working hours and while defendant was serving as President of the Board of Education of Wilmington.

Defendant raises three objections to the proceedings below and on appeal. *First*, defendant contends that the amended counts of the indictment to which he pled guilty should be dismissed because they fail to charge an offense under 11 *Del.C.* § 1211(2). *Second*, defendant contends that the Trial Court abused its discretion in sentencing defendant to a term of incarcera-

tion for each of the official misconduct counts to which he pled guilty. And *third*, defendant contends that the refusal of a Justice of this Court, not a member of the panel sitting in this case, to permit defendant to see the sentencing recommendation section of the Pre–Sentence Report was an abuse of discretion adversely affecting defendant's appellate rights. The American Civil Liberties Union–Delaware, which was granted leave to file an *amicus curiae* brief, argues that the sentences should be vacated on constitutional grounds. We take up these defenses seriatim.

I

Howell was originally indicted on five misdemeanor counts of official misconduct in violation of 11 *Del.C.*, § 1211(2); five counts of theft, three felony and two misdemeanor counts, in violation of 11 *Del.C.* § 841;[3] one count of conspiracy second degree, a felony, in violation of 11 *Del.C.* § 512;[4] and two counts of criminal solicitation, both felonies, in violation of 11 *Del.C.* § 502.[5] All the charges concerned work and

1. See *Fromal v. State*, Del.Supr., 399 A.2d 529 (1979), where this Court stated:

"In *Robinson v. State*, Del.Supr., 291 A.2d 279 (1972), the Court eliminated the requirement that a defendant must admit the actual commission of the offense charged as a prerequisite to acceptance of a guilty plea. Cf. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). By doing so, we adopted the Federal interpretation of Superior Court Criminal Rule 11. See 8 *Moore's Federal Practice* ' 11.03[3] (2d ed.) and the 1966 Advisory Committee's Note." 399 A.2d 529, 530 n.*

2. 11 *Del.C.* § 1211(2) provides:

"A public servant is guilty of official misconduct when, intending to obtain a personal benefit or to cause harm to another person:

.    .    .    .    .

(2) He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office . . . ."

3. 11 *Del.C.* § 841 provides:

"A person is guilty of theft when he takes, exercises control over or obtains property of another person intending to deprive him of it or appropriate it. Theft includes the acts described in §§ 842 through 846 of this title.

A person is guilty of theft if he, in any capacity, legally receives, takes, exercises control over or obtains property of another which is the subject of theft, and fraudulently converts same to his own use."

4. 11 *Del.C.* § 512 provides:

"A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of a felony, he:

(1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or

(2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony, and he or another person with whom he conspired commits an overt act in pursuance of the conspiracy."

5. 11 *Del.C.* § 502 provides:

"A person is guilty of criminal solicitation in the second degree when, intending that another person engage in conduct constituting a felony, he solicits, requests, commands, importunes or otherwise attempts to cause the other person to engage in conduct which would constitute the felony or an attempt to commit the felony, or which would establish the other's complicity in its commission or attempted commission."

materials furnished Howell's personal residence while Howell served as President of the Board of Public Education of Wilmington and for which he did not, until nearly two years later, reimburse the School Board.

After the Trial Court had denied defendant's pretrial motion to dismiss the official misconduct counts of the original indictment for failure to allege facts constituting offenses, the parties entered into a plea agreement. Under its terms defendant entered pleas of guilty to two of the amended official misconduct counts, and the State then *nolle prossed* the remaining 11 counts. The amended counts differed from the original counts only in alleging that Howell had failed "in a timely fashion" to reimburse the School Board for the materials and labor provided Howell at the Board's expense—to reflect Howell's repayment.

Before accepting defendant's pleas, the Trial Court asked counsel whether the amended indictment stated offenses of official misconduct:

THE COURT: Mr. Halberstadt, are you satisfied that your client is pleading guilty to the offense of Official Misconduct, Official Misconduct with the amendment as proposed by the State?

MR. HALBERSTADT: Your Honor, the answer to that question is yes. This Robinson plea would be in the nature of that, without an admission of guilt, but that the statute which speaks in terms of failure to meet a duty that is inherent in the position. The amended indictment provides that that inherent duty would include the duty of reimbursing the Board in a timely fashion. We believe that would be encompassed within the thrust of the Statute.

\*    \*    \*    \*    \*    \*

THE COURT: Is it sufficient, merely that one uses public funds without authority?

MR. OBERLY: The State believes it does where it is done knowingly. That language is not changed.

THE COURT: Do you agree, Mr. Halberstadt?

MR. HALBERSTADT: Yes. The language as presently stated still alleges the necessary intent which is fundamental to that Statute, the intent to obtain a personal benefit, knowingly refraining from performing the duty. The amendment goes to the timeliness of the performance of that duty, as far as the State is concerned. We believe the purpose of the Robinson plea is that the duty would be found to exist in an unstated fashion, as it is stated here, or in an untimely fashion, when the duty is not performed within a timely period.

So, really, what has been done here is the gist of the indictment has been changed to be more specific, to simply reflect the fact that Mr. Howell did eventually pay all monies that were to be found to be due.

The State contends that defendant, having pled guilty to an amended indictment that defendant conceded before the Trial Court to state offenses under 11 *Del.C.* § 1211(2), should now, in effect, be estopped from arguing on appeal that the amended indictment did not state offenses under § 1211(2).[6] See *United States v. Broncheau*, 9th Cir., 597 F.2d 1260 (1979), cert. den., 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979), *Coleman v. Burnett*, D.C.Cir., 477 F.2d 1187 (1973); *Beasley v. State*, Md.App., 299 A.2d 482 (1973). Defendant, on the other hand, contends that failure to charge an offense amounts to a jurisdictional defect which may not be waived. *Brisson v. Warden of Connecticut State Prison*, Conn.Super., 25 Conn.Super. 202, 200 A.2d 250 (1964); *Baker v. State*, Md.App., 6 Md.App. 148, 250 A.2d 677 (1969).

We find defendant's jurisdictional argument to be controlled by *Fountain v. State*, Del.Supr., 288 A.2d 277 (1972). There we held that "the failure of an indictment or information to allege an essential element of the offense charged is not considered a

6. Defendant conceded at time of entering his pleas that his decision to plead guilty to the two misdemeanor counts was to avoid the risk of a possible conviction on the felony counts.

jurisdictional defect." 288 A.2d at 279. However, we shall proceed to decide the question presented on its merits.

■ 11 *Del.C.* § 1211(1) and (2) provide, in pertinent part, as follows:

"A public servant is guilty of official misconduct when, intending to obtain a personal benefit or to cause harm to another person:

(1) He commits an act constituting an unauthorized exercise of his official functions, knowing that the act is unauthorized; or

(2) He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office...."

The pertinent portions of the amended counts of the indictment to which Howell pleaded guilty charged that Howell

"... in the capacity of a public servant as President of the Board of Public Education in Wilmington, and intending to obtain a personal benefit, knowingly refrained from performing a duty which was clearly inherent in the nature of his office, in that he knowingly refrained from reimbursing in a timely fashion the Board for materials and labor provided at the Board's expense [for Howell's personal residence]."

The gist of Howell's argument is that § 1211 is confined to criminal conduct of public servants in their performance of official functions or duties. Defendant states that any knowing breach of duty of a public servant which occurs outside his officially prescribed duties is not a duty "clearly inherent in the nature of his office"–within the ambit of § 1211(2). Hence, defendant says that while his failure to "quickly reimburse the Board may have been an ethical violation at most, ... it cannot be fairly said to be 'official misconduct'–a breach of

a specific official duty of the office of President." We disagree because we find § 1211(2) to be sufficiently broad to encompass the offenses to which defendant entered guilty pleas.

As the Court below noted, § 1211 deals with a wide spectrum of official misconduct by a public servant. Subsection (1) of § 1211 is concerned with acts "constituting an unauthorized exercise of [a public servant's] official functions." Subsection (3) of § 1211 is concerned with performance of "official functions" in such a manner as to "benefit [a public servant's] own property or financial interests"; and subsection (4) of § 1211 concerns the performance of "official functions in a way intended to practice discrimination."[7] In contrast, subsection (2) of § 1211 is not confined to the performance of "official functions" but is concerned with the failure to perform a duty either imposed by law or "clearly inherent in the nature of [a public servant's] office."

The Commentary on § 1211, which was enacted in 1973 as part of the Delaware Criminal Code, discusses the underlying purpose § 1211. It was to embrace within the new crime of "official misconduct" all former acts of misconduct in public office which had previously been separately treated under the classifications of malfeasance, misfeasance and nonfeasance in office. Commentary, Delaware Criminal Code (1973), 11 *Del.C.* § 1211.

Under prior law, nonfeasance by a public officer was defined as the "willful failure or neglect to perform a duty imposed upon him by law." *State v. Matushefske*, Del.Super., 215 A.2d 443, 447 (1965). The Commentary describes subsection (2) of § 1211 as covering "a case of knowing nonfeasance, when a duty is clearly imposed upon the accused by law *or* is inherent in the nature of his office." (underlying added)

---

**7.** Subsections (3) and (4) of § 1211 provide as follows:

"(3) He performs his official functions in a way intended to benefit his own property or financial interests under circumstances in which his actions would not have been reasonably justified in consideration of the factors which he

ought to have taken into account in performing his functions; or

(4) He knowingly performs his official functions in a way intended to practice discrimination on the basis of race, creed, color, sex or national origin."

The Commentary adds that "[s]imple non-feasance, unaccompanied with any intent to gain a benefit ... would not constitute official misconduct." Thus, the words, "intending to obtain a personal benefit", found in the introductory clause of § 1211, are an essential element of the offense of official misconduct.

The Commentary to § 1211 does not narrowly confine the statutory offense to that of misconduct in official duties but rather describes the offense as "misconduct in office." And § 1211 is found within Subpart B, titled "Abuse of Office", of Subchapter VI of the Criminal Code, titled "Offenses Against Public Administration." The use of such broadly–stated terms is consistent with the language and evident legislative intent of § 1211(2). We think that intent is two–fold: (1) to extend the common law crime of nonfeasance to include a public servant's personal gain from his knowing failure to perform a duty "clearly inherent in the nature of his office"; and (2) not to confine such duties to the official functions of a public servant.

Thus, we cannot agree with defendant that a § 1211 offense of "official misconduct" is limited to misconduct by a public servant only with respect to his official duties. As President of the Board of Education, Howell had an inherent duty under § 1211(2) not to profit personally from the services and property of the public agency. This was a duty clearly inherent in the nature of his office; and his knowing failure to perform such duty constitutes a violation of § 1211(2).

*State v. Green*, Del.Super., 376 A.2d 424 (1977), upon which defendant heavily relies, is clearly distinguishable. *Green* did not involve the misuse of public funds. Green, as State Banking Commissioner, was charged with receiving benefits from private sources from which a conflict of interest might arise in the performance of his duties as a public official. While Green's

actions were found to be ethically reprehensible, they did not involve criminal conduct or the use of his authority as a public officer to obtain personal benefits from public funds.

We hold that the amended counts of the indictment to which defendant pled guilty charged offenses under 11 *Del.C.* § 1211(2); and that the offense of official misconduct under § 1211(2) is not confined to the failure of a public servant to perform his official powers, functions or duties.

## II

We turn to defendant's and *amicus'* contentions that the Trial Judge committed reversible error in sentencing defendant to a term of incarceration for each of the two counts of official misconduct to which defendant entered "Robinson" guilty pleas.

The sentence imposed upon defendant as to each of the § 1211(2) offenses was that defendant pay the cost of prosecution and be imprisoned for a term of two years, with one year suspended, and that the sentences be served consecutively. The misconduct offenses involved are designated by the Legislature as Class A misdemeanors—the most serious of the four misdemeanor categories under our Criminal Code; and the sentences imposed were within the limits prescribed by the Legislature for such a crime.[8] Thus, our scope of review is confined to the issue of abuse of discretion. *Armbruster v. State*, Del.Supr., 396 A.2d 156 (1978); *Kreisher v. State*, Del.Supr., 319 A.2d 31 (1974).

Defendant asserts that the Trial Judge abused his discretion in four respects: (1) in failing to give consideration to individual factors and instead, by adopting a "mechanistic" approach to defendant's sentencing, contrary to *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); (2) in relying upon "impermissible" factors in imposing sentence, in violation of *O'Brien v. United States*, 1st Cir., 376 F.2d 538 (1967)

---

8. 11 *Del.C.* § 4206(a) provides, in pertinent part, as to the sentence for a Class A misdemeanor:

"The sentence for a Class A misdemeanor shall be fixed by the court and shall not exceed 2 years imprisonment and such fine or other conditions as the court may order ...." .

(vacated on other grounds, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)); (3) in rejecting the State's recommendation of probation, in violation of *Hinckle v. State*, Del.Supr., 189 A.2d 432 (1963); and (4) in failing to provide any basis for the resulting disparity in sentence between that imposed on defendant and that imposed by another Judge upon defendant's unindicted co–conspirator.[9] *Amicus* argues that to impose different sentences on defendants who are guilty of the same crime without giving reasons is constitutionally impermissible. We find the contentions to be factually and legally unsupportable and therefore affirm.

In sentencing defendant, the Trial Judge stated:

THE COURT: At the outset, the Court points out that the defendant did plead guilty to the charges, stating on the record, of course, a denial of certain elements of them and stating what the defendant considered as a justification for entering the guilty plea. So the Court faces this as a guilty plea of two misdemeanor charges, charges of an official misconduct.

At an earlier stage of this proceeding the Court spoke as to the responsibility of public officials with respect to public assets, and I won't repeat what was said in that letter opinion. I think–I know it's been disseminated to the pertinent–to those who are concerned with this, and I think it's been given fairly wide publicity.

But suffice it to say, top officials must provide leadership and examples of morality and integrity in public affairs.

Now, this transaction involved the furnishing of services which were being paid for by employees of the state, and this is not a moonlighting situation, but using people for time that they were being paid by the state. And it must be born in mind, regardless of what the practice may have been in a particular agency,

that the state was not in the business and is not in the business of providing services for private benefit, whether they're paid for or not. And certainly those in top positions cannot, in a situation like this, be considered to be followers. They're the ones responsible for the pattern of conduct in the department.

Now, the magnitude of the benefits involved here runs to several thousand dollars. There has been, according to the pre–sentence report, a substantial reimbursement which, according to the pre–sentence report, came about in the middle of an Attorney General's investigation. So that this is not the situation of a person coming forward, without some pressure of volunteer–relenting and volunteering to overcome what had previously been done.

According to this, there was an initial payment of thirty–three hundred dollars on May 8, 1978. It seems to me that–considering all of the factors, that this cannot be simply overlooked. I've been given the example of Mr. Dineen, where there was a form of overlooking. There was no imprisonment. On the other hand, there are a number of instances where this Court has held public officials to a higher degree of penalty. I'm not going to review these individual cases, but it does seem to me that they–they have sufficient similarity to be applicable. And what the Court is going to do is–does not reflect either vindictiveness of compulsion. The Court is judging this case based on what the Court has before it with respect to this occurrence.

■ Defendant states that he was thereby sentenced "by his 'status' as a public official without reference to the 'individualized' necessary components that should have entered into sentencing" and under a "new and legally unsupportable category of sentencing standard [under which] public

**9.** Russell D. F. Dineen, Assistant Superintendent for Business Affairs of the Wilmington Board of Public Education, was originally indicted on nine counts, six of which arose from the same transactions involving defendant. The State granted Dineen immunity from prosecution on all six counts involving defendant; and Dineen then pled guilty to one misdemeanor count of official misconduct involving an amount of less than $200. Sentenced by another Judge of the Superior Court, Dineen received a term of probation.

officials are held 'to a higher degree of penalty'."

The short answer is that the Legislature, not the Court, determined that public servants should as a class be held criminally accountable for misconduct in public office. Thus, in stressing defendant's status as a public official, the Court merely echoed the statute's mandate that public servants not abuse their office.

We also find the Court's remarks to reflect an individualized approach to sentencing. In referring to "top" officials as being expected to be leaders, not "followers", the Court considered defendant's senior position in terms of weighing his responsibility for what happened. And in considering the amount of money involved and the lateness of its reimbursement, the Court focused on individual and wholly relevant factors. Cf. *O'Brien v. United States*, 1st Cir., 376 F.2d 538 (1967).

■■■ A sentencing judge is not required to follow a sentence imposed on a co–defendant by a different judge. *Commonwealth v. Neal*, 258 Pa.Super. 375, 392 A.2d 841 (1978). Disparity in sentence between co–defendants as to the same or similar crimes is not a basis for reversal. To disturb a sentence on appeal, there must be a showing either of the imposition of an illegal sentence or of abuse of the trial judge's broad discretion. *United States v. Noll*, 5th Cir., 600 F.2d 1123 (1979). No such showing has been made here.

Moreover, the Court did, impliedly if not explicitly, give its reasons for imposing a more severe sentence on defendant than that received by his co–conspirator, Dineen, from another Judge of the Superior Court. The Trial Judge's above–quoted reference to persons in top positions being "responsible for the pattern of conduct in the department" unmistakably led the Court to conclude that defendant's offense deserved a term of imprisonment notwithstanding the probation granted as to Dineen. Thus, the

basis for the disparity in sentencing was enunciated and not left unstated, as *amicus* argues. And the authorities relied upon by both defendant and *amicus* finding reversible error in sentencing are inapposite. Cf. *United States v. Wardlaw*, 1st Cir., 576 F.2d 932 (1978). There is no evidence that the Court relied upon either false information or impermissible factors in sentencing defendant. *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *United States v. Cavazos*, 5th Cir., 530 F.2d 4 (1976).

*Hinckle v. State*, Del.Supr., 189 A.2d 432 (1963) and *Hamilton v. State*, Del.Supr., 285 A.2d 807 (1971), upon which defendant and *amicus* rely heavily, are not in point. Each involved a situation where a defendant indicted for a greater crime pled guilty to a lesser crime and yet received a sentence equal to or in excess of that permitted for the greater crime.

■■■ Finally, defendant does not contend that in entering his pleas, he was led to believe that the State's recommendation as to sentencing would be adopted by the Court. It is clear from the record that defendant was advised, both by counsel and by the Court–before his pleas were accepted–that the Court was not bound by the State's recommendation. Therefore, it was not error for the Court not to follow the State's recommendation. *State v. Miles*, Neb.Supr., 194 Neb. 128, 230 N.W.2d 227 (1975).

### III

■■■ Lastly, defendant argues that error was committed by a Justice of this Court, not a member of this panel, in denying defendant access on appeal to the recommendation section of the Superior Court's Presentence Report. Prior to sentencing, the Superior Court had granted defendant, through counsel, access to all but the recommendation section of the Report, in accord with the usual practice of the Court.[10]

---

10. Superior Court Criminal Rule 32(c) governing presentence investigation provides:

"(c) *Presentence Investigation.*

(1) *When Made.* The probation officer of the Court shall make a presentence investigation and report to the Court before the impo-

Following sentence, the entire Presentence Report was, on defendant's motion, made a part of the record for appeal. And, after docketing this appeal, defendant then moved for disclosure of the recommendation section of the Report. The motion was denied by Justice Quillen of this Court on the ground that the Superior Court's restriction on disclosure of the Report should be adhered to in the Supreme Court—without prejudice to defendant's right to argue the issue on appeal.

Conceding that the issue is one of judicial discretion and not legal right, defendant nevertheless argues that denial of access to the recommendation section materially affected his "appellate rights" and thereby constituted an abuse of discretion.

Defendant reasons that since the issue on appeal relates to the Trial Court's exercise of discretion in sentencing defendant, all materials placed before the sentencing Judge should be reviewed by this Court and, if available to this Court, should be equally available to defendant. Defendant argues that denying him access to the recommendation section of the Report "materially affects defendant's ability to rely upon or respond to such recommendations as part of [his] argument challenging the Trial Court's discretion." Conversely, permitting defendant access to the recommendation of the probation officer of the Superior Court permits counsel to argue "the effect of the Trial Court's accepting or rejecting that recommendation." We find defendant's reasoning to demonstrate the lack of merit of the argument and fully justify the limited disclosure.

In *State v. Moore*, Del.Super., 108 A.2d 675 (1954), Chief Justice Herrmann, then a Judge of the Superior Court, held that due process rights were not offended by denying a criminal defendant access before sentencing to the Court's presentence report. Discretionary access to such reports was legislatively sanctioned with the later enactment of 11 *Del.C.* § 4322(a), stating, in part, "... the court may, in its discretion, permit the inspection of the [presentence] report or parts thereof by the offender or his attorney .... The presentence reports prepared for the Superior Court and the Court of Common Pleas shall be under the control of those Courts respectively."

While failure to disclose the investigative portion of a presentence report to counsel for a criminal defendant may "in practical effect" be equivalent to denial of access to counsel, *United States v. Verdugo*, 9th Cir., 402 F.2d 599 (1968), cert. den., 402 U.S. 961, 91 S.Ct. 1623, 29 L.Ed.2d 124 (1971), that is not this case. No contention is made that the sentence in question was based on erroneous or impermissible information. And defendant acknowledges having had the opportunity through counsel to review that portion of the presentence report.

The State argues that no practical purpose would result from requiring a disclosure of the sentencing recommendation of the probation officer. We agree.

Since the imposition of sentencing is not a delegable responsibility, any sentencing recommendation of a presentence officer is purely advisory in nature and otherwise legally irrelevant. Officers employed to conduct presentence investigations are officers of the Court. As such, they are an arm of the Court and their recommendations to be considered privileged internal communications.

The purpose of the presentence report is, in the language of 11 *Del.C.* § 4331, to "report upon the history of the accused and any and all relevant facts, to the end that the court may be fully advised as to the appropriate and just sentence to be imposed

sition of sentence or the granting of probation if the Court so directs. The report shall not be submitted to the Court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty.

(2) *Report.* The report of the presentence investigation shall contain any prior criminal record of the defendant and such information

about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the Court."

. . . . " Further, while the Presentence Report "may recommend conditions [of probation or suspension of sentence] to be imposed by the court", 11 *Del.C.* § 4332 provides that "nothing in this chapter shall limit the authority of the court to impose or modify any general or specific conditions of probation or suspension of sentence."

AFFIRMED.