OPINION OF THE COURT
William D. Friedmann, J.
In this homicide prosecution, defendants object to the deceased’s family and their supporter-spectators, wearing in the courtroom, obtrusive corsages of red and black ribbons of approximately five to six inches in length.
Specifically before the jury entered the courtroom and the taking of evidence commenced, defendants’ attorneys brought to the attention of the court that approximately 35 persons, occupying one half of the spectator seats in the courtroom were wearing red and black ribbon corsages. The court immediately held an on the record side-bar conference. Defendants contended that the ribbons represented an unfair attempt to impede justice and influence and/or pressure the jury/court, thereby denying them a fair and impartial courtroom environment and resulting trial. The prosecutor contended that the ribbons were only symbols of concern and solidarity for the victim’s family by persons affiliated with the not-for-profit national organization called "Parents of Murdered Children” and/or its New York branch, "Parents of Murdered Children of New York State, Inc.” It is to be noticed that one of the announced goals of this organization is "to make the criminal justice system more sensitive to the needs of victims and treat victims with greater compassion and concern”. The prosecutor also contended that the wearing of such ribbons had been permitted in other nameless, but relevant recent criminal proceedings in the Second Judicial Department. No specifics were ever submitted.
After hearing such argument, this court summarily ruled, in open court, in the absence of the jury, that the wearing of the ribbons in the courtroom would be prohibited. Compliance was promptly obtained and the trial continued.
*38 RELEVANT LAW
The simple act of wearing concern and/or support ribbons or other expressive symbolic clothing or accessories or the carrying of objects of similar import by spectators and/or participants in a public courtroom frames a much more complex problem.
Its resolution requires a court to make a value judgment based upon the balancing of the exercise of First Amendment and Fourteenth Amendment rights by spectators and/or participants with the obligations of a Judge to maintain courtroom order and decorum.
In order to place hands on the propriety of courtroom wearing of ribbons and/or other similar forms of expression, it would seem useful to review such forms of expression in their constitutional context.
Freedom of expression, though at the very core of our organized democratic society, exists only under law and not independent of it (Terminiello v Chicago, 337 US 1, 31 [dissenting opn, Jackson, J.]).
As we all should know, the rights of free speech and assembly, though fundamental in our constitutional scheme of government, are not absolute under our laws (Cox v Louisiana, 379 US 536, 545; Adderley v Florida, 385 US 39, 48; People v Radich, 26 NY2d 114, 118-119; People v Street, 20 NY2d 231, 235; People v DuPont, 107 AD2d 247, 254). Such rights do not mean that everyone may express themselves without limitation at any time or at any place, even in certain public places. (Cox v Louisiana, 379 US, at 559; Adderley v Florida, supra, at 54 [Douglas, J., dissenting]; Edwards v South Carolina, 372 US 229; Poulos v New Hampshire, 345 US 395.)
There are some public places, such as a courtroom, which are so clearly committed to special and defined purposes that their use for the airing of general grievances would be clearly out of order, i.e., the communication of feelings or concerns about any person, issue or cause involved or otherwise would be entirely out of place.
This court rejects any premise that people who want to communicate protests, views or feelings of any kind or nature, for or against any person, issue or cause, have a constitutional right to so within the confines of a public courtroom. Such matters must be communicated through an evidentiary way at *39 trial or hearing or other court sessions pursuant to prescribed rules of courtroom procedure and/or decorum.
We must remind ourselves that a courtroom is committed to being a neutral environment — a holy shrine of impartiality in its resolutions of differences, and a place dedicated to fairness and equal treatment under law (20 Am Jur 2d, Courts, §§ 36, 38, 39).
Our New York courts have long maintained that a Judge or a court has the duty to preside over and control judicial proceedings in public trial consistent with the demands of decorum and due process (People v Culkin, 248 NY 465; People v Mendola, 2 NY2d 270, 276; People v Hargrove, 60 AD2d 636, 637; People v Hagan, 24 NY2d 395, 397; and see, United States v Fay, 350 F2d 967 [2d Cir], where it was held that the constitutional right to a public trial is subject to the power of a Judge to preserve the fairness and orderliness of court proceedings).
That there is clearly an inherent discretionary power in our courts to preserve order and decorum in our courtrooms and in the pursuance of such power, to protect the rights of all parties and witnesses and generally to further the administration of justice cannot be questioned (People v Jelke, 308 NY 56, 63; Matter of Peck v Stone, 32 AD2d 506; and see, Bowers, Judicial Discretion of Trial Courts, § 262, at 296-297 [1931]; 6 Wigmore, Evidence, at 338 [3d ed 1940]; 1 Bentham, Rationale of Judicial Evidence, at 541 et seq. [1827]).
These long-revered obligations to maintain court and/or courtroom decorum have been incorporated into Code of Judicial Conduct Canon 3 (A) (2), and further codified by the Appellate Division of the Supreme Court in the Second Judicial Department in its Special Rules Concerning Court Decorum (22 NYCRR part 700).
Relevant portions of part 700 state:
"700.2 Importance of decorum in court. The courtroom, as the place where justice is dispensed, must at all times satisfy the appearance as well as the reality of fairness and equal treatment. Dignity, order and decorum are indispensable to the proper administration of justice. Disruptive conduct by any person while the court is in session is forbidden.”
"700.3 Disruptive conduct defined. Disruptive conduct is any intentional conduct by any person in the courtroom that substantially interferes with the dignity, order and decorum of judicial proceedings” (and see, 22 NYCRR 604.1 [b], [c]; Matter *40 of Breitbart v Galligan, 135 AD2d 323 [for an interpretation of that First Department court decorum rule]).
In determining what is conduct that can/or has disrupted courtroom decorum, it would seem that an affected court must employ an objective analysis, sifting the inadvertent innocent expression from other forms of individual or group expression.
To the end of preventing or correcting disruptive conduct, a court, as herein, must act immediately and in summary fashion, without the necessity of holding an evidentiary hearing, having the presence of counsel, granting of an adjournment and/or referring the matter to another Judge, etc. (Matter of Katz v Murtagh, 28 NY2d 234, 238.)
This principle of summary action has been codified in 22 NYCRR part 701 (special rules concerning exercise of the judicial contempt power by the Appellate Division, Second Department), and by the Appellate Division, First Department, at 22 NYCRR 604.2 (and see, Penal Law § 215.50 [7] [which provides for criminal contempt in the second degree and specifically states: "On or along a public street or sidewalk within a radius of two hundred feet of any building established as a courthouse, he calls aloud, shouts, holds or displays placards or signs containing written or printed matter, concerning the conduct of a trial being held in such courthouse or the character of the court or jury engaged in such trial or calling for or demanding any specified action or determination by such court or jury in connection with such trial.”]).
Pursuant to its discretionary powers as supplemented by these relevant rules, this court determines that the wearing of noticeable or obtrusive, expressive or symbolic clothing, uniforms, and/or accessories, including ribbons, ties, armbands, buttons, flowers, etc., or other carrying of certain tangible objects such as signs, flags, dolls, pictures, distinctive books, etc., whether utilized as illustrations of concern, etc., for or against persons, issues, or causes can constitute conduct disruptive of a courtroom environment, which environment must be scrupulously dedicated to the appearance as well as the reality of fairness and equal treatment. The court and/or jury must not be exposed to these forms of communication.
This court’s determination seems in harmony with the limited reported authorities speaking on this subject.
In State v Franklin (327 SE2d 449), the West Virginia Supreme Court, in 1985, reversed a defendant’s conviction *41 there for driving under the influence of alcohol resulting in death because the local Sheriff, President of the local Mothers Against Drunk Driving (MADD) chapter, and 10 to 30 spectators wore large bright yellow MADD buttons while attending the trial.
In State v Gens (107 SC 448, 93 SE 139 [1917]), the South Carolina Supreme Court reversed the defendant’s conviction of transporting liquor because during trial several women had held up large posters condemning liquor before the jury. In United States v Rios Ruiz (579 F2d 670 [1st Cir 1978]), the First Circuit upheld the trial court’s asking three uniformed policemen-spectators to leave the courtroom during the trial of a policeman accused of beating two persons while arresting them. To the contrary, Woods v State (490 So 2d 24 [1986]), where the Florida Supreme Court held that the trial court did not abuse its discretion in failing to exclude uniformed spectators.
In State v Peters (44 Haw 1, 352 P2d 329), the Hawaii Supreme Court held that motioning by a spectator-daughter to her witness father could constitute grounds for a mistrial.
In Fitzpatrick v St. Louis-San Francisco Ry. Co. (327 SW2d 801), the Missouri Supreme Court reversed and remanded in a loss of eye case when a blind man with a white cane entered the courtroom during a jury trial and sat behind the plaintiff and his family.
In a recent nonjury homicide prosecution (People v Dayao, indictment No. 649/1989), this court, in the absence of objection from defendants, permitted approximately 35 spectators wearing bright yellow tee shirts bearing the blue legend "Justice For Jimmy” (the victim), to remain in the courtroom during the trial. Upon reflection, this tolerance, even in a nonjury context, would not be allowed in the future.
In People v McCray (Sup Ct, NY County, indictment No. 4762/89), Justice Thomas Galligan, in the high profile "Central Park Jogger” case, barred a spectator-brother of one of defendants from wearing a black sweatshirt with the letters emblemized in white, "My Brother Antron McCray Is Innocent” (NY Daily News, Oct. 31, 1990).
CONCLUSION
This court’s research does not find anything relevant in the Constitution of the United States (First and Fourteenth Amends), or in that of the NY Constitution (art I, § 8), which *42 prevents a court, in the furtherance of the administration of justice, from the even-handed enforcement of reasonable rules of order and decorum in a courtroom.
Our sacred constitutional guarantees including that of free expression, means the removal of a maximum number of restraints from all individuals and that most attempts to maintain order at the expense of such guarantees be deemed by our courts to be improper and impermissible (Cohen v California, 403 US 15, 19; Tinker v Des Moines School Dist., 393 US 503, 509). However, in balancing such guarantees within the need to maintain reasonable order and decorum in the courtroom, both logic and precedent indicate that the restraint of free expression or assembly may be tolerated in certain locations such as a courtroom. The interests of justice require that there be communication and assembly restraints in a courtroom setting, in order that a courtroom be liable to satisfy "the appearance as well as the reality of fairness and equal treatment” (22 NYCRR 700.2).
Judges and court officials as well as court support personnel should be accorded the widest authority in maintaining good order and decorum in their courtrooms. To translate that proposition into a workable constitutional principle, this court would cast upon those complaining about a court order, concerning order and decorum restricting free expression, the burden of showing that the questioned ruling was motivated by other than a reasonably legitimate concern for preserving fairness and equal treatment in the courtroom.
Research in New York and other jurisdictions indicates that a court order pertaining to order and decorum in the courtroom will be upheld if that order is reasonably particularized, and is based upon a compelling reason calculated to promote the orderly administration of justice. (Matter of Peck v Stone, 32 AD2d 506, 508, 509, supra; People v O’Sullivan, 96 Misc 2d 52; People v Pearl, 66 Misc 2d 502, 503; and see, Annotation, Court’s Imposition of Dress Code, 73 ALR3d 355, 359; Sandstrom v State, 309 So 2d 17 [Fla Dist Ct App 1975]; Calder v Levi, 168 Md 260, 274, 275, 177 A 392.)