Gus TRAMILL, Defendant Below,
Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee,

Clinton JACKSON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted Nov. 16, 1979.

Decided Jan. 30, 1980.

Nancy Jane Mullen, Asst. Public Defender, Wilmington, for defendants below-appellants.

Francis Mieczkowski, Deputy Atty. Gen., Wilmington, for plaintiff below-appellee.

Before DUFFY, McNEILLY and HORSEY, JJ.

McNEILLY, Justice:

The defendants, Clinton Jackson and Gus Tramill, were convicted of Robbery First Degree, Conspiracy Second Degree, and Possession of a Deadly Weapon During the Commission of a Felony resulting from their holdup of a grocery store while in the company of two accomplices. Jackson was sentenced to 20 years for Robbery, 4 years for Conspiracy, and 10 years on the weapons charge. Tramill was sentenced to 15 years for Robbery, 2 years for Conspiracy, and 10 years on the weapons charge. All sentences were to run concurrently.

The defendants appealed and their convictions were reversed by this Court. *Jackson v. State*, Del.Supr., 374 A.2d 1 (1977). They were retried, but the jury was unable to agree on a verdict; and a mistrial was declared. The defendants were tried for the third time and convicted of Robbery First Degree and Conspiracy Second Degree. Jackson was sentenced to 20 years for Robbery and 4 years for Conspiracy. Tramill was sentenced to 15 years for Robbery and 1 year for Conspiracy. All sentences were to run consecutively.

The defendants appeal their latest convictions alleging that (1) their right to a speedy trial was violated, (2) the testimony of an eye-witness violated their rights to due process of law; (3) there is insufficient evidence to sustain their convictions; and (4) their current sentences were imposed in violation of their rights to due process of law under the Fourteenth Amendment.

We affirm in part, reverse in part, and remand.

I

The defendants argue that their trial has been impermissibly delayed in violation of their right to a speedy trial under the Sixth and Fourteenth Amendments to the United States' Constitution. The defendants points to the five month delay prior to their first trial, the five month delay between the reversal of their convictions and their retrial, and the three month delay between the mistrial and their third trial. They assert that the cumulative delay of thirteen months is impermissible under the standards set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

*Barker v. Wingo*, supra, established four factors to be considered in assessing whether a defendant's right to a speedy trial has been violated. They are: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. The Court stated "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors.... [T]he length of the delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker v. Wingo*, 407 U.S. at 530–31, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

While we might agree that a thirteen month delay was presumptively prejudicial in other circumstances, we cannot agree with that characterization in this case. The delay was accumulated over the course of three separate trials. We agree that the speedy trial right applies to retrials as well as trials, but the number of trials contributing to the delay must be considered. In addition, three months delay were at the request of the defendants.

"[I]f delay is attributable to the defendant[s], then ... [their] waiver may be given effect ...." *Barker v. Wingo*, 407 U.S. at 529, 92 S.Ct. at 2191, 33 L.Ed.2d at

116. Thus, we perceive the situation as one in which the defendants experienced a ten month delay in obtaining three trials. We cannot agree that the delay, in this case, was presumptively prejudicial or sufficient to trigger the balancing test in *Barker v. Wingo*, supra, and hold that the defendants were not denied their right to a speedy trial.

## II

The defendants allege that they were denied due process of law, guaranteed in the Fourteenth Amendment, in their third trial. They assert that the successive retrials of their case "bolstered" the State's evidence in that the eye-witness to the crime was more certain of her identification of the defendants in the third trial than she was in the first. The defendants do not allege that this resulted from improper conduct.

Instead, they assert that, as a matter of course, the witness' repeated exposures to the defendants at the successive trials strengthened her identifications. We agree that the witness appears to have been more certain in her identification at the third trial than she was at the first. However, we cannot agree that the defendants' rights to due process of law were violated.

■ Certainly, the State is permitted to retry a defendant who obtains an appellate reversal of his criminal conviction, *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). In fact, a reversal acts to wipe the slate clean. *North Carolina v. Pearce*, 395 U.S. at 721, 89 S.Ct. at 2078, 23 L.Ed.2d at 667. The fact that witnesses unavoidably gain experience in testifying in successive trials does not indicate that use of their testimony offends the principles of due process of law. Accord, *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973).

■ The foundation of due process is fundamental fairness. *Malinski v. New York*, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029 (1945); *United States v. Birnbaum*, 2d Cir., 373 F.2d 250, cert. denied 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967). The testimony of the witness in question was a necessary part of the State's case at each trial. In addition, the witness' prior testimony was available and was used for impeachment of her testimony at the third trial. See e. g., *United States v. Birnbaum*, supra; *United States ex rel. Parson v. Anderson*, D.Del., 354 F.Supp. 1060 (1972), aff'd, 3d Cir., 481 F.2d 94, cert. denied 414 U.S. 1072, 94 S.Ct. 586, 38 L.Ed.2d 479 (1973). As a result, considered in its entirety, the testimony of the witness was weaker at the third trial. In light of the facts that any "bolstering" was minimal, unintentional, unavoidable, and subject to impeachment, we cannot find the use of the witness at the third trial to be fundamentally unfair. We hold that the defendants were not denied due process of law.

## III

■ The defendants argue that there is insufficient evidence to support their convictions. They characterize the State's evidence as consisting of the unbelievable uncorroborated testimony of the two accomplices. We cannot agree. The uncorroborated testimony of one accomplice can be sufficient to sustain a conviction. *State v. Winsett*, Del.Supr., 205 A.2d 510 (1964). The State produced the testimony of two accomplices in addition to the testimony of the eye-witness. It also produced two witnesses to rebut the asserted defense of alibi.

■ Not only would the defendants have us overlook the corroborating testimony of the eye-witness, but they would have this Court determine what weight to give conflicting testimony. "The weight to be accorded such testimony is, of course, for the jury to decide." *O'Neal v. State*, Del.Supr., 247 A.2d 207, 210 (1968). Considering the entire record in the light most favorable to the State, we hold that there was sufficient evidence for the jury to have found the defendants guilty beyond a reasonable doubt. Cf. *Edwards v. State*, Del.Supr., 285 A.2d 805 (1971) and *Jacobs v. State*, Del. Supr., 358 A.2d 725, 728–29 (1976).

## IV

The defendants' final assertion is that they received sentences which were impermissibly increased after their successful appeal in violation of the rule announced in *North Carolina v. Pearce, supra.* That case, however, does not *per se* prohibit any increase in the sentence of a criminal convicted on retrial after a successful appellate attack on his original conviction.

Instead, as this Court noted in *Jacobs v. State*, Del.Supr., 358 A.2d 725, 729 (1976) the Supreme Court of the United States held

> "due process does require that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial and second conviction. Moreover, so that a defendant in such a situation may be freed of any apprehension of retaliatory motivation on the part of the sentencing judge, the reasons for the more severe second sentence (1) must affirmatively appear in the record and (2) must be based on objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." (citations omitted)

*Pearce* and the subsequent cases make clear that the focus of an analysis of this issue is whether the record has been developed sufficiently to show that any increase in the sentence is not the result of vindictiveness or punishment for the exercise of the right to appeal. See e. g., *Blackledge v. Perry*, supra; *Chaffin v. Stynchcombe*, supra; *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).

After the first trial, defendant Jackson was sentenced to 20 years for Robbery, 4 years for Conspiracy, and 10 years for Possession of a Deadly Weapon During the Commission of a Felony. After the third trial, Jackson was sentenced to 20 years for

Robbery and 4 years for Conspiracy. His claim is, because the sentences after his first conviction were to run concurrently and his present sentences are to run consecutively, that in actuality his sentence has been increased from a maximum of 20 years to a maximum of 24 years. Using the same reasoning, Tramill asserts that his sentence has been increased from a maximum of 15 years to a maximum of 16 years.

■ This approach of looking at the potential maximum number of years of imprisonment to determine the severity of a sentence under a *Pearce* analysis has been adopted by at least one court. See *United States v. Barash*, 2d Cir., 428 F.2d 328 (1970); appeal after remand 434 F.2d 358, cert. denied 401 U.S. 938, 91 S.Ct. 928, 28 L.Ed.2d 217 (1971). As this issue was neither briefed nor argued before this Court, we decline to express an opinion on whether this is the best or the only approach.* Instead, because the defendants urge this method upon us and because, on these facts, it meets the constitutional standard, for the purposes of this appeal we accept the defendants' assertions that their current sentences are more severe.

The only remaining question is whether the record contains objective information concerning identifiable conduct which has occurred subsequent to the original sentencing. When sentencing defendant Jackson, the Court stated "I'm going to impose a different sentence, because, one, of his attitude as demonstrated since the conviction on the robbery charge; and, two, because this Judge is imposing this sentence under conditions and ideas that were different from those expressed by the previous Judge." The Court was referring to incidents of misconduct while in prison after the original sentencing, which apparently were delineated in the presentence report. When sentencing defendant Tramill the Court specifically asked defense counsel about various instances of the defendant's

---

* The charges of possession of a Deadly Weapon During the Commission of a Felony were dismissed at the second trial. The weapons offense carries a mandatory sentence. See 11 *Del.C.* § 1447. As a result of the dismissal, we

are not faced with the question of whether a twenty year sentence, subject to parole in less than ten (10) years, is more severe than a ten (10) year sentence, not subject to parole.

misconduct while in prison after his original sentencing, which were contained in his presentence report. The Court discussed these directly with the defendant and noted its disapproval of his actions.

However, the Court did not state specifically that the defendant's increased sentence was a result of those incidents, nor were either of the presentence reports made part of the record. Cf. *United States v. Lincoln*, 9th Cir., 581 F.2d 200 (1978) (holding the *Pearce* requirements were satisfied by incorporating, without comment, a presentence report delineating post-sentencing misconduct). Despite being conscious of the colloquy between the Court, defense counsel, and the defendants, we cannot find the record demonstrates that the increase in the defendants' sentences resulted from objective information concerning identifiable conduct occurring subsequent to the original sentencing.

The problem with the sentencings in this case is that the record, while indicating the sentencing Judge knew he was increasing the sentences, does not identify in sufficient detail the reasons for the increases. General comments about incidents with prison guards do not provide an adequate basis upon which this Court can rely to determine that vindictiveness was not a factor in the resentencing. We do not conclude that vindictiveness was present, merely that it is not demonstrably absent.

■ Consequently, we must reverse and remand for adjustment of the sentences to eliminate their increased severity. Before this Court will affirm a resentencing in a case in which *North Carolina v. Pearce*, supra, and *Jacobs v. State*, supra, are applicable, the record must include: 1) acknowledgment by the sentencing Judge that the new sentence is more severe, 2) objective details concerning one or more incidents which have occurred subsequent to the original sentencing, 3) a statement to the defendant that the increased sentence results from the identified conduct, and 4) an indication that the amount of the increase is justified on the basis of the identified conduct. Because these requirements are not

in the present record, we reverse the sentences of the defendants and remand for resentencing consistent with this opinion.

\* \* \* \* \* \*

AFFIRMED in part, REVERSED in part, and REMANDED.