Jasen, J.
(dissenting). Regrettably, the majority continues the undeviating and distinctive drift away from the intended narrow function of New York’s accomplice corroboration rule.
Prior to the 1881 enactment of the accomplice corroboration rule (Code Crim Pro, § 399, from which CPL 60.22, subd 1, is derived), New York followed the common-law view that although the uncorroborated testimony of an accomplice should be received with caution, a conviction would stand exclusively upon the basis of such evidence. (People v Doyle, 21 NY 578.) Indeed, accomplice testimony was embraced at common law and various colonial statutes provided incentives for defendants to give testimony against codefendants by offering pardons and rewards. (See Act of Assembly, Nov. 25, 1751, 3 Col Laws of NY, p 856; Act of Assembly, March 24,1772, 5 Col Laws of NY, p 353.) As an act in derogation of the common law, section 399 of the Code of Criminal Procedure was necessarily accorded a strict construction by 19th century courts. For example, this court, when called upon to determine whether accomplice testimony was sufficiently corroborated as required by the relatively recent statute (Code *310 Crim Pro, § 399), noted that the point was “fully answered by our decision in the Jaehne Case [People v Jaehne, 103 NY 182]”. [People v O’Neil, 109 NY 251, 267.) In People u Jaehne (103 NY 182,199-200, supra), the court, faced with the sufficiency of accomplice corroboration of a confession, held the confession to be corroborated by only slight corroborating facts. Thus, by this court’s analogy to the standards necessary to uphold a confession, it was early held that corroboration of accomplice testimony is achieved by a very slight factual showing, and the adequacy of such showing is reserved for jury consideration.
In a majority of sister State jurisdictions, the uncorroborated testimony of an accomplice will support a criminal conviction. (State v La Fountain, 140 Conn 613; Tramill v State, 425 A2d 142 [Del]; Jalbert v State, 95 So 2d 589 [Fla]; State v Lincoln, 3 Hawaii App 107; People v Pittman, 93 Ill 2d 169; Smith v State, 455 NE2d 346 [Ind]; State v Roth, 207 Kan 691; Murphy v Commonwealth, 652 SW2d 69 [Ky], cert den 465 US_, 79 L ed 2d 751 [three Justices dissenting]; State v Matassa, 222 La 363; State v Sawyer, 314 A2d 830 [Me]; Commonwealth v Stewart, 375 Mass 380 [conviction may be based on the uncorroborated testimony of accomplice, provided the accomplice has not been formally granted immunity]; People v Dukes, 120 Mich App 662; Gandy v State, 438 So 2d 279 [Miss]; State v Moore, 642 SW2d 917 [Mo]; State v Huffman, 214 Neb 429; State v Thresher, 122 NH 63; State v Butler, 32 NJ 166; State u Gutierrez, 75 NM 580; State v Lester, 294 NC 220; Commonwealth v Hudson, 489 Pa 620; State v DeMasi, 413 A2d 99 [RI]; State v Steadman, 257 SC 528; Johnson v Commonwealth, 224 Va 525; State v Johnson, 77 Wn 2d 423; State v Vance, 262 SE2d 423 [W Va]; Ostrowski v State, 665 P2d 471 [Wyo].) It is not coincidental that of the 21 States which had required corroboration of accomplice testimony in 1954, 15 States had restricted the Judge’s charge by constitutional provision, statute or case law to forbid the Judge from commenting upon the weight of such testimony to the jury. (Note, The Rosenberg Case: Some Reflections on Federal Criminal Law, 54 Col L Rev 220, 235.) It should be noted that it is the rule in Federal courts that a person accused of a crime may be convicted solely upon the uncor *311 roborated testimony of an accomplice. (See, e.g., United States v Wright, 573 F2d 681, cert den 436 US 949; United States v Trevino, 565 F2d 1317, cert den 435 US 971.) The widespread rejection of the corroboration requirement reflects a dissatisfaction with a rule of evidence which arbitrarily determines, in advance of testimony, in ignorance of the circumstances, and without considering demeanor, that an accomplice is not credible. (See State v Litchfield, 58 Me 267, 270; State v Betsall, 11 W Va 703, 741.)
The accomplice corroboration rule has long been the subject of criticism in New York. In 1939, for example, the Commission on the Administration of Justice, established by chapter 79 of the Laws of 1939, urged the repeal of the corroboration requirement and observed: “Present section 399 providing that a conviction cannot be had upon the uncorroborated testimony of an accomplice, has been deleted. The Commission was strongly of the opinion that this section in the present Code is a refuge of organized crime and protects the principals in racketeering cases. The deletion of this provision will remove the present anomalies in the law arising from statutory exceptions and court decisions relating to the question as to who is an accomplice, such as the rule that a thief and a receiver are not accomplices. The Commission carefully considered the possibility that the deletion of this provision might encourage frame-ups and related abuses, but was strongly of the opinion that such would not be the case. The deletion of this provision merely restores the common law and permits the trial court to give appropriate instructions in each case affecting the credibility of the testimony offered instead of binding the court to the general rule prescribed by the statute.” (Emphasis added.) (NY Legis Doc, 1939, No. 76, p 124.) This view was reiterated 40 years later (People v Cona, 49 NY2d 26, 37-47 [Jasen, J., dissenting]) ahd is restated today, with emphasis added.
Bearing in mind that CPL 60.22 is satisfied by corroboration evidence which tends to connect the defendant with the crime in such a way that the jury is reasonably satisfied that the accomplice is telling the truth, and such corroborative evidence need not exclude to a moral cer *312 tainty every hypothesis but that of wrongdoing (People v Daniels, 37 NY2d 624, 630), I turn to the facts of this case.
On December 20,1978, Arthur K. Watt, a young serviceman, arrived in New York City to spend Christmas with his family after serving his first six weeks in the Army at Fort Leonard Wood, Missouri. On his way home, Watt stopped at a bar located in upper Manhattan, a few blocks from his mother’s house. With other patrons of the bar, he went to a fourth floor apartment at 2725 Eighth Avenue. In the early morning hours, the Fire Department arrived to investigate smoke emanating from the fourth floor apartment. Arthur Watt’s body was discovered in the apartment. He was found lying face up in the living room, his hands tied behind his back, with an electric cord at his feet. He had been stabbed six times, and a tie had been knotted around his neck tightly enough to strangle him. There were burns covering most of his body from a fire that had been set by scattering a flammable liquid on and around his body.
Defendant was implicated as a participant in the barbarous murder of Watt by the testimony of an accomplice, Lynette Baker. Baker’s detailed description of the manner in which Watt was killed was mirrored by the observations of the fire marshal and detective upon investigation at the scene of the crime. In order to corroborate this accomplice testimony, the People introduced the testimony of Margaret Jennings, who lived in the apartment across the hall from the situs of the killing. Jennings testified that at approximately 11:00 p.m., she had seen the defendant leaving the apartment in which the murder was to occur three or four hours later. Baker testified that defendant had used the apartment on other occasions in the past. In addition, the People introduced defendant’s videotaped statement to the Assistant District Attorney, which was recorded the night defendant was arrested. In this statement, defendant denied any involvement in the murder. He acknowledged that he knew the building where the murder took place, but he claimed he had never been in it. He also claimed that he had not been in Manhattan the entire week of the murder. Defendant insisted that he had spent that week in The Bronx.
*313 In People v Dixon (231 NY 111, 116), this court spoke to the requirement that accomplice testimony be corroborated, and noted: “The ‘other evidence’ must be such ‘as tends to connect defendant with the commission of the crime.’ The corroborative evidence need not show the commission of the crime; it need not show that defendant was connected with the commission of the crime * * * It is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth. The corroboration is not restricted to any particular point. Its connection with defendant’s own statements and denials should be considered.”
Matters in themselves of seeming indifference or light trifles of time and place may so harmonize with the accomplice’s narrative as to have a tendency to furnish the connection between the defendant and the crime. (People v Dixon, 231 NY 111, 117, supra.) It may be said that while each of the particulars of independent corroborative evidence, taken separately and without reference to the accomplice’s testimony, is innocuous and nonindicative, the cumulative effect of the sum of the particulars establishes the requisite corroboration. A mode of evaluation which views each element of the corroborative evidence in a vacuum, without regard to the entire record, constitutes an erroneously high legal standard. It has been established that evidence corroborative of accomplice testimony is to be viewed cumulatively, in light of the entire record. (People v Hudson, 51 NY2d 233; People v Glasper, 52 NY2d 970; People v Dory, 59 NY2d 121, 129; see, also, Mitchell v State, 650 SW2d 801 [Tex].)
In my view, the independent testimony establishing defendant’s presence at the scene of the crime, shortly before the murder in the vacant apartment, contradicts the videotaped statement by defendant that he was not in Manhattan the night of the murder and contradicts defendant’s statement that he was never in the apartment building where the murder occurred, all of which tend to corroborate the accomplice testimony. By contradicting defendant’s videotaped statement, the corroborating testimony did more than place defendant in Manhattan and in the *314 apartment building, since it specifically pinpointed defendant’s presence at the very apartment in which the killing was to occur, on the night of such occurrence. Moreover, the independent corroborating testimony could be credited as showing that defendant attempted to fabricate a false alibi. When viewing the establishment of defendant’s presence at the apartment in which the murder occurred, together with defendant’s attempt to completely divorce himself from the Borough of Manhattan and the apartment building in question by means of a false alibi, the cumulative effect justifies the inference that his presence at the vacant apartment the night of the murder was a guilty presence.
In People v Deitsch (237 NY 300, 303), this court held that presence is relevant on the issue of corroboration where the defendant denies his presence and denial is proved false. People v Deitsch (supra) has unequivocally established that where, as here, presence at the situs of the crime is established by independent, credible evidence, and this fact is coupled with a false denial of presence, accomplice testimony implicating defendant in the crime is sufficiently corroborated. (Accord People v Gorski, 236 NY 673; People v McGuire, 135 NY 639, 641.) The defendant’s false story, evincing as it does a consciousness of guilt, constitutes the essential corroborative evidence for accomplice testimony. (People v Ruberto, 10 NY2d 428, 430; People v Leyra, 1 NY2d 199, 208.) In the instant case, the false alibi represents an expressed, unambiguous and affirmative effort by defendant to sever any connection between himself and the scene of the crime by his statement that he was never in the apartment building. Once defendant has been placed at the scene of the crime, and the jury found that he had lied about such presence, whether such presence was remote from or in close temporal proximity to the time of the murder is a question of degree to be evaluated by the jury.
We are not afforded the benefit of defendant’s explanation of the inconsistency between his videotaped statement and the independent testimony of Margaret Jennings, as the defendant did not take the stand and the defense did not present evidence. If this case was tried in California, a *315 staunch supporter of the accomplice corroboration rule, defendant’s failure to testify would add weight to the corroborating evidence. (People v Keene, 128 Cal App 2d 520; People v Goldstein, 136 Cal App 2d 778, 790 [“It is nevertheless persuasive, lending weight to the evidence presented by the prosecution upon matters presumptively within defendant’s knowledge, and which if untruly stated would normally be denied by him”].)
For all those reasons, I would affirm the order of the Appellate Division.
Chief Judge Cooke and Judges Jones, Meyer and Simons concur with Judge Kaye; Judge Jasen dissents and votes to affirm in a separate opinion; Judge Wachtler taking no part.
Order reversed and order of Supreme Court, New York County, reinstated.