**Woody S. FAIRCLOTH,**
**Defendant-below,**
**Appellant,**

v.

**STATE of Delaware, Appellee.**

Supreme Court of Delaware.

Submitted: Feb. 18, 1987.
Decided: March 24, 1987.

Woody S. Faircloth, pro se.

Gary A. Myers, Deputy Atty. Gen., Georgetown, for appellee.

Before CHRISTIE, C.J., MOORE and HOLLAND, JJ.

HOLLAND, Justice:

Woody S. Faircloth, the defendant, acting *pro se*, filed a motion for post-conviction relief under Superior Court Rule 35(a). Faircloth alleged that the Superior Court had erred in sentencing him following a conviction for escape. This is an appeal from the Superior Court's denial of that Rule 35 motion.

### The Facts

On January 28, 1983, the Superior Court originally sentenced Woody Faircloth as follows:

| Crime | Sentence |
|---|---|
| a) Reckless Endangering (0036) (11 Del. C. § 604) | Two years imprisonment beginning July 6, 1982 |
| b) Reckless Endangering (0037) (11 Del. C. § 604) | Two years imprisonment (consecutive) |
| c) Criminal Mischief (0042) (11 Del. C. § 811) | Six months imprisonment (consecutive) |
| d) Driving While Under Influence (0044) (21 Del. C. § 4177) | One year imprisonment (consecutive) |
| e) Disobeying Police Officer (0046) (21 Del. C. § 4103) | Sixty days imprisonment (consecutive) |

*State v. Woody Faircloth*, Del.Super., S.C., 82–07–0036, 0037, 0042, 0044, 0046, Sentence (Jan. 28, 1983) [*Faircloth 1*]. The total term of imprisonment under these consecutive sentences was five years, eight months. The term thus ran until March 5, 1988. On July 6, 1984, Faircloth escaped from his incarceration for those charges while on "supervised custody" status. Forty-one days later, he was re-captured. Subsequently, he pled guilty to Escape after Conviction. 11 *Del.C.* § 1253 (1984 Supp.). *State v. Woody Faircloth*, Del.Super., S.C. 84–07–0047 (Jan. 16, 1985) [*Faircloth 2*].

On May 24, 1985, the Superior Court sentenced Faircloth for the escape. It ordered that he "be imprisoned for a period of eight years beginning at the end of any

term of imprisonment now being served." However, the Superior Court suspended the last four years of that incarceration for a similar term of probation. But, it ordered, pursuant to the authority granted under 11 *Del.C.* § 4204(k), that the Department of Corrections (DOC) not consider Faircloth for any release during the initial four years of imprisonment. On May 24, 1985, the Superior Court also "extended" Faircloth's "term" on the prior convictions an additional forty-one days for the time he was on escape status. When the Superior Court "added" the forty-one days to Faircloth's prison term, it did not specify any particular sentence.

Based upon the Superior Court's sentence in *Faircloth 2*, the DOC calculated that the four year escape sentence was to begin at the conclusion of the aggregate sentences imposed in *Faircloth 1*. Thus, DOC determined that this four year term would not start until April, 1988 [1] and would run to April 5, 1992. DOC, Status Report (March 14, 1986) (Appellant's Attachment 2).

### The Contentions

Faircloth filed a *pro se* post-conviction motion under Superior Court Criminal Rule 35(a) on September 16, 1986. In that application, Faircloth argued that the Superior Court had erred in not specifying a date for the commencement of his escape sentence. That omission, he argued, permitted the DOC to incorrectly determine that the escape sentence was to begin at the termination of all of his prior sentences. According to Faircloth, under a "plain reading" of the sentencing order, the escape sentence was to begin either on the date of sentencing (May 24, 1985) or at the completion of the particular sentence in *Faircloth 1* he was serving on that day, i.e., from July 6, 1984 to July 6, 1986. The remaining sentences in *Faircloth 1* would then, he contended, be served after completion of the term of imprisonment based on the escape sentence.

The Superior Court denied Faircloth's motion. It determined that the DOC had correctly read the *Faircloth 2* sentencing language to refer to the expiration of *all* the prior sentences and not any particular sentence. The Court held that this "postponement" of the escape sentence was not illegal:

> "While the statute requires that '. . . the term shall be fixed, and the time of its commencement and ending specified . . .' the total sentence expressed in years, months and days is a determining factor of the length of a sentence irrespective of the expiration and terminating dates. *Frye v. State*, Del.Supr., 236 A.2d 424 (1967). At the time Judge Tease imposed sentence on the present charge, you were already sentenced under at least four other charges and the imposed terms of imprisonment were to run consecutively. Those terms of imprisonment were interrupted by your escape, the substance of the present charge. Under such circumstances, the Court is not required to ascertain which of numerous sentences of imprisonment you were currently serving and the imposition of a quantum sentence does not constitute an illegal sentence or a violation of your substantial rights."

### Reformation of Original Sentence

We first address the argument that the Superior Court was required by statute to state the date of the commencement and the date of termination of Faircloth's sentence. Faircloth's argument finds support in this Court's decision in *James v. State*, Del.Supr., 385 A.2d 725 (1978). However, *James* presented an unusual factual situation. In *James*, following an escape, the defendant was tried but found not guilty of the escape charge. The issue in *James* was how to recompute the sentence that was being served at the time of the escape. This Court held that "the reforming of a Superior Court sentence, after return from an escape, remains a judicial function which may not be delegated by the court to be performed administratively by the correctional authorities." *James v. State*, 385 A.2d at 727. The reformation of the sen-

---

[1] This represented an extension of the original "term" imposed in *Faircloth 1* by forty-one days.

tence which is addressed by *James* is the sentence that was being served at the time of the escape.

In Faircloth's case, the Superior Court did not delegate the reformation of the original sentence to the correctional authorities but specifically ordered that Faircloth's aggregate sentences on the prior convictions which were being served at the time of his escape be extended "an additional 41 days for the time he was on escape status." This determination by the Superior Court, i.e., the specific number of days by which the original sentences were to be extended, satisfied the requirement of *James* for judicial reformation of a sentence being served following recapture after an escape. This form of sentence also satisfied the requirement of the sentencing statute. 11 *Del.C.* § 3901. The quantum of the sentence, expressed here in days, is always controlling irrespective of the statement of an expiration date. *Frye v. State,* Del.Supr., 236 A.2d 424 at 425 (1963).

### The New Escape Sentence

In *James,* the question of when incarceration for the escape conviction would commence was never addressed since *James* was acquitted of the escape charge. Faircloth raises a significantly different issue because if it is ruled that the new escape sentence must begin on a specific date (carefully picked as the ending date of all earlier sentences), it is a fiction since the correction officials *do* have authority to give time off for good behavior, etc. Under such circumstances, it seems more appropriate for the Superior Court to enter an order for a specific term (in years, months, or days) that is to commence at the end of a sentence or sentences "now being served." This would be true for any sentence imposed for a crime that was committed during a period of incarceration. It also comports with the dictates of the sentencing statute. As we held in *Frye:*

> "The basic question before us is whether the quantum, expressed in years, months or days, or an imposed sentence, or the expiration and termination date of the sentence required to

be stated by 11 *Del.C.* § 3902(a), is controlling. The question has long been settled in this State. The quantum of the sentence controls, irrespective of the expiration date stated.

> It has been held that the statute requiring the specification of the commencement and ending of a sentence simply prescribes a rule of mathematical convenience as a matter of descriptive detail. In the event of conflict between the quantum of the sentence imposed and the date of termination, the former controls."

*Faircloth's* argument with respect to this latter proposition is that the Superior Court did not clearly indicate that the "quantum" of the new sentence (expressed in years) for the escape conviction would begin at the end of *all* of the sentences he was then serving. Rather he argues that it was phrased to commence at the conclusion of the single sentence that he was serving when he actually escaped. Faircloth's argument is not entirely semantic since a judge might properly distinguish between the sentence being served and the sentences being served. We must, therefore, examine the language of the Superior Court sentence in the context in which it was imposed.

The Department of Corrections construed the sentence of the Superior Court to require the escape sentence to begin at the end of the aggregate term of all sentences previously imposed. According to Faircloth, the DOC's decision caused him injury. This is because the escape sentence was subject to constraints on institutional release (11 *Del.C.* § 4204(k)), its placement at the end of the sentencing series precluded him from being considered for release on all of the prior sentences. In contrast, if the escape sentence was interjected into the *Faircloth 1* sentences, Faircloth would be eligible for institutional release on the remaining sentences after completion of the escape sentence.

Initially, in assessing Faircloth's claim, two propositions are clear. First, Faircloth cannot, and apparently does not, claim that the escape sentence was to be

served concurrently with any of the prior sentences. *See* 11 *Del.C.* § 1253 (1984 Supp.) ("Any sentence imposed upon conviction of escape after conviction shall not run concurrently with any other sentence."); 11 *Del.C.* § 3901(d) (1979) ("No sentence of confinement ... shall be made to run concurrently with any other sentence of confinement ..."). Second, it is clear that the Superior Court had the power to order that the escape sentence be served consecutive to *all* the *Faircloth 1* sentences. Under 11 *Del.C.* § 3901(b) (1979), the new sentence could begin to run at the "expiration of such other sentence *or sentences,* as the court shall, in its discretion, direct." Consequently, Faircloth's present claim can be resolved by determining whether the Superior Court *intended* the escape sentence to begin at the end of the aggregate term of sentences previously imposed.

At its heart, Faircloth's claim is that sentencing orders should be read with a "wooden literalness" devoid of any consideration of context. While this argument is novel to this State, his efforts are not without precedent. During the 1950's and 1960's, numerous other prisoners urged the courts to construe similar sentencing language in the manner he proposes. Almost uniformly, the courts refused to exalt the "wooden" interpretation he proposes over a common sense reading of the sentencing language.

In *non-escape situations,* involving a sentence imposed subsequent to several prior sentences, other courts have realized that in sentencing situations "when the intent is clear, several consecutive sentences may be treated as one general cumulative sentence." *Smith v. Wilkinson,* 275 F.2d 251, 252 (5th Cir.1960) (subsequent sentence "to begin at expiration of sentence you are presently serving" referred to end of all prior sentences). *Accord Williamson v. United States,* 374 F.2d 90, 91–2 (5th Cir.1967) (subsequent sentence to "commence at expiration of sentence imposed" in prior action referred to aggregate of all earlier sentences); *Ong v. Hunger,* 196 F.2d 256 (10th Cir.1952)) (consecutive sentence referred to service subsequent to all prior sentences); *Montgomery v. United*

*States,* 165 F.2d 196, 197–98 (8th Cir.) *cert. denied,* 334 U.S. 834, 68 S.Ct. 1341, 92 L.Ed. 1761 (1948) (sentence "consecutive to sentence now being served" meant service subsequent to all prior terms of imprisonment); *State v. Dento,* N.J.Super., App. Div., 107 A.2d 507, 509–11 (1954) *cert. denied,* 351 U.S. 941, 76 S.Ct. 839, 100 L.Ed. 1467 (1956) (sentence to run "consecutively with term you are now serving" referred to aggregate of prior sentences, not particular sentence at time); *State v. Heslip,* N.J. Super., App.Div., 99 N.J.Super. 97, 238 A.2d 692, 693–95 (1968) (sentence to run "consecutive to sentence you are presently serving" referred to aggregate.

█ Here, when the language of the escape sentence is read in context, it is clear that the sentence was to be served at the expiration of all the sentences in *Faircloth 1.* The order imposes the escape sentence consecutive to "any term of imprisonment" being served rather than any "sentence" being served. The former phrase more appropriately speaks to an aggregate term of confinement rather than a period under any particular conviction. Contemporaneous with the imposition of the *Faircloth 2* sentence, the Superior Court treated the *Faircloth 1* sentences as an aggregate term. Thus, when it "extended" Faircloth's earlier sentences to make up for the days lost while he was free, the Superior Court ordered that "[t]he *Sentence now being served* on *the above charges* be recomputed." *Faircloth 1,* (Appellant's Attachment 3). By describing the sentence "now being served" as resulting from all the prior charges, the Court clearly indicated that it viewed the prior sentences as one term of imprisonment for sentencing purposes.

Faircloth's interpretation would lead to an illogical result. Under his theory, not only would the escape sentence interrupt the prior sentences, but the escape sentence itself would have to be divided. The last four years of imprisonment on the escape sentence were suspended for probation. Under Faircloth's view, that sentence would necessarily be split, the prison term coming in the middle, but the probation at the end. The Superior Court's order surely did not contemplate such a separation.

The sentencing judge clearly indicated that the escape sentence was not meant to be construed in Faircloth's favor. Moreover, in rejecting a motion for reduction filed just two months after the escape sentence was imposed, the sentencing judge emphasized that he felt that Faircloth had "cast aside all the efforts to help him straighten his life out and simply ignored the criminal justice system despite 'his receiving considerations that others may not have received.'"

### CONCLUSION

The record clearly reflects that the sentencing judge intended the escape sentence to commence at the conclusion of all prior sentences being served by Faircloth at the time of his escape. The Department of Corrections construction of the Superior Court sentence for escape was entirely correct.

The judgment of the Superior Court is AFFIRMED.