Paul E. **WEBER**, Defendant Below, Appellant,

v.

**STATE** of Delaware, Plaintiff Below, Appellee.

No. 579, 1992.

Supreme Court of Delaware.

Submitted: Feb. 7, 1995.
Decided: March 15, 1995.
Rehearing Denied March 31, 1995.

Leo J. Ramunno, Ramunno & Ramunno, P.A., Wilmington, DE, for appellant.

Loren C. Meyers, Dept. of Justice, Wilmington, DE, for appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ. (constituting the Court en Banc).

HOLLAND, Justice:

The defendant-appellant, Paul E. Weber ("Weber"), was convicted in the Superior Court on charges of Kidnapping in the First Degree, two counts of Aggravated Intimidation, Intimidation, Burglary in the Second Degree, Assault in the Second Degree, Assault in the Third Degree, Menacing, and Resisting Arrest. On appeal, this Court reversed the kidnapping conviction, remanded Weber's case for retrial on the charges of Aggravated Intimidation and Intimidation, and affirmed the remaining convictions. *See Weber v. State*, Del.Supr., 547 A.2d 948, 961 (1988).

### Weber's 1988 Sentence

With regard to the convictions that were affirmed on appeal and became final, the Superior Court resentenced Weber on October 11, 1988 to 6½ years of imprisonment. The effective date of the sentence was again set at February 13, 1985,* making the expiration of the sentence August 8, 1991. Weber obtained a conditional release pursuant to 11 *Del.C.* § 4348 for the sentence he was serving and was released on bail awaiting retrial on the charges. Weber was free from custody for a total of one year, four months and twelve days. While out of prison on conditional release and bail, Weber was arrested and convicted in the Court of Common Pleas on a new charge of Assault in the Third Degree.

### Weber's 1991 Sentence

In May 1991, Weber was retried on the remanded charges. He was convicted of Aggravated Intimidation, Intimidation and Terroristic Threatening. Weber's bail was revoked and he was incarcerated. On June 28, 1991, Weber was sentenced to 12 years for the new convictions, the effective date of his sentence being May 17, 1991, the date of reconviction and incarceration.

The Department of Correction determined that the May 1991 sentence was separate and distinct from the 1988 sentence because Weber was not incarcerated at the time of his 1991 conviction. Weber moved for correction of the 1991 sentence. He asserted that the sentence following his retrial should be treated as a continuation of the previous final sentences, rather than as a separate sentence, so as not to deny him any credit for time served. The Superior Court denied the motion.

---

* Weber was arrested on February 13, 1985. After his conviction in January 1986, the Superior Court sentenced him to a life term of imprisonment (with parole eligibility), plus 17½ years. To give Weber credit for his pretrial detention, the effective date of his sentence was set at February 13, 1985. *See* 11 *Del.C.* § 3901(b).

### This Appeal
### Lost "Good Time" Credit

This appeal follows that denial of Weber's motion. Weber's contention is that the "separate" manner in which the 1991 sentence was imposed denied him credit for "good time" served during his initial incarceration and constitutes a failure to credit him for "punishment already exacted," as required by *North Carolina v. Pearce*, 395 U.S. 711, 718, 89 S.Ct. 2072, 2077, 23 L.Ed.2d 656 (1969). Weber also contends that the 1991 sentence penalizes him for taking a successful appeal.

"To disturb a sentence on appeal, there must be a showing either of the imposition of an illegal sentence or of abuse of the trial judge's broad discretion." *See Howell v. State*, Del.Supr., 421 A.2d 892, 899 (1980) (citing *United States v. Noll*, 600 F.2d 1123 (5th Cir.1979)). Weber has not challenged the discretion of the trial court. His appeal asserts that the sentence imposed in May of 1991 is illegal.

### Weber's 1991 Sentence
### No Double Jeopardy Violation

■ According to Weber, the 1991 sentence is illegal in that it violates the Double Jeopardy Clause of the Fifth Amendment. The guarantee against double jeopardy

> has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. *And it protects against multiple punishments for the same offense.*

*North Carolina v. Pearce*, 395 U.S. at 717, 89 S.Ct. at 2076 (footnotes omitted) (emphasis added). *See United States v. DiFrancesco*, 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980). Weber contends that the Superior Court's 1991 sentence violated the third category of double jeopardy protection.

In *Pearce*, the Supreme Court stated that "the constitutional guarantee against multiple punishments for the same offense absolutely requires that *punishment already exacted* must be fully 'credited' in imposing sentence upon a new conviction for the same offense." *North Carolina v. Pearce*, 395 U.S. at 718–19, 89 S.Ct. at 2077 (footnote omitted) (emphasis added). The record reflects that Weber's original sentence was set to run from his initial incarceration date. After his partially successful appeal, Weber was resentenced in 1988 to ensure that his sentence reflected only those charges on which he was properly convicted.

After recalculating the sentence, the trial judge again set the beginning date for the 1988 sentence at February 13, 1985. Consequently, Weber did receive credit for the time he had already served. In sentencing and resentencing Weber, the trial judge's actions conformed with *Pearce*. The sentences for the convictions that had become final began from the first date of incarceration (February 1985). Therefore, Weber received "credit" for all of the pre-conviction time he had actually served, i.e., for *"punishment already exacted."*

### Weber's 1991 Sentence
### Standards After Successful Appeal

■ In addition to credit for time served, Weber contends that he is entitled to receive credits for "good time" served from 1985 to 1989. To achieve that result, Weber argues that the 1988 and 1991 sentences *must* be aggregated. Properly framed, the question becomes whether the United States Constitution *requires* that Weber's 1988 and 1991 sentences be aggregated (run consecutively from 1985) to total 18½ years, or may, as the Superior Court did, be treated as one 1988 sentence for 6½ years and another, new 1991 sentence, for 12 years.

Weber's related contention is that he was "punished" for taking a partially successful appeal. Two policies must be balanced: 1) a defendant must not be punished for taking an appeal, *see North Carolina v. Pearce*, 395 U.S. at 724, 89 S.Ct. at 2080; and 2) the imposition of a sentence is within the discretion of the trial court and effect is to be given to its intent. *See Faircloth v. State*, Del. Supr., 522 A.2d 1268, 1272–73 (1987); *Howell v. State*, Del.Supr., 421 A.2d 892, 899 (1980).

There is "no absolute constitutional bar to the imposition of a more severe sentence on reconviction after the defendant's successful appeal of the original judgment of conviction." *United States v. DiFrancesco*, 449 U.S. at 135, 101 S.Ct. at 436. Nevertheless, "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *North Carolina v. Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081. This Court has indicated that increased penalties are valid so long as the trial judge meets articulated requirements. *White v. State*, Del.Supr., 576 A.2d 1322, 1328–29 (1990); *Tramill v. State*, Del.Supr., 425 A.2d 142 (1980). *Tramill* requires:

> 1) acknowledgement by the sentencing Judge that the new sentence is more severe, 2) objective details concerning one or more incidents which have occurred subsequent to the original sentencing, 3) a statement to the defendant that the increased sentence results from the identified conduct, and 4) an indication that the amount of the increase is justified on the basis of the identified conduct.

*Id.* at 146.

### Weber's 1991 Sentence
### Intervening Criminal Conviction
### Loss of Credit Intended

In *Faircloth*, this Court looked to the sentencing judge's intent to determine when a prisoner's sentence for escape was to commence. *Faircloth v. State*, 522 A.2d at 1272–73. In the present case, the intent of the Superior Court is unambiguous. In ruling on Weber's September 1992 motion for reduction of sentence, the Superior Court judge wrote to Weber's attorney:

> Second, you question whether the Court intended to impose the incarcerative portion of Mr. Weber's sentence as a new sentence or consecutive to the sentences he was previously serving. At the time Mr. Weber was sentenced, he was not incarcerated under any previous sentence. The Department of Correction thus correctly interprets my sentence as beginning on May 17, 1991. You argue that beginning this sentence on that date in effect

treats Mr. Weber more harshly than otherwise because he was successful in having a previous conviction reversed. Mr. Weber was treated more harshly by this Court not because of the previous conviction and reversal but [because] he chose to commit a violent crime while on parole from the previous sentence.

In a February 1993 letter to Weber and in his November 1993 ruling on Weber's motion for correction of sentence, the judge reiterated his earlier statement. Under *Faircloth*, it is clear on this record that the Superior Court intended that Weber's 1991 sentence be treated separate from his earlier sentence, not that the two sentences be aggregated.

In imposing the new 1991 sentence, the Superior Court acknowledged that the "separate" sentencing structure denied Weber the ability to apply credits for "good time" earned while serving his 1988 sentence to the 1991 sentence. The transcript of the 1991 sentencing clearly reflects the judge's dismay with Weber's conduct pending retrial and the desire to increase the severity of the new sentence. The 1991 sentence was imposed to deprive Weber of credit for "good time" only as a result of the additional criminal activity. In fact, in the November 1993 ruling, the court explicitly noted that "it was enhancing his penalty due to his conviction of another offense and the defendant's loss of 'good time' was within the contemplation of the court." This statement indicates that Weber was not treated more harshly because he successfully took an appeal; rather, he was treated more harshly because of the intervening assault conviction. To impose a sentence so as to deprive the defendant of such time due to subsequent conduct falls entirely within the discretion of the sentencing judge.

### Weber's 1991 Sentence
### A Proper Enhancement

■ A trial judge may impose a greater sentence in "light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' " *North Carolina v. Pearce*, 395 U.S. at 723, 89 S.Ct. at 2079 (quoting *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93

L.Ed. 1337 (1949)). There is no constitutional right to "good time" credit. *See Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (stating that "[i]t is true that the Constitution itself does not guarantee good time credit for satisfactory behavior while in prison"); *Spurlin v. Department of Corrections*, Del.Supr., 230 A.2d 276, 277 (1967) (holding that "[i]t is not necessarily true that earned good time prior to parole becomes a right vested in a prisoner which may not be taken from him"). The loss of credit for "good time" served on the original sentence was within the discretion of the sentencing judge.

### Conclusion

There was no double jeopardy violation in the enhancement of Weber's sentence. The intervening conviction of third degree assault provided a basis for the Superior Court to impose a more severe punishment upon resentencing. "A trial judge is not constitutionally precluded ... from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.'" *North Carolina v. Pearce*, 395 U.S. at 723, 89 S.Ct. at 2079 (quoting *Williams v. New York*, 337 U.S. at 245, 69 S.Ct. at 1082). In Weber's case, the Superior Court clearly met this requirement. The judgment of the Superior Court is *AFFIRMED*.