**Itius WYNN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 621, 2010.**

Supreme Court of Delaware.

Submitted: June 22, 2011.
Decided: June 27, 2011.

---

30.  13 *Del. C.* § 722(a)(5).

Michael C. Heyden, Esquire, Wilmington, Delaware, for appellant.

James T. Wakley, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

HOLLAND, Justice:

The defendant-appellant, Itius D. Wynn ("Wynn"), appeals from final judgments in the Superior Court sentencing him for his convictions of two counts of Assault in the Second Degree,[1] two counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"),[2] and one count of Reckless Endangering in the First Degree.[3] On appeal, Wynn claims that the trial court erred by imposing a more severe sentence than recommended under the relevant Sentencing Accountability Commission ("SENTAC") Benchbook guidelines. We have concluded those claims are without merit.

### Facts

On October 31, 2009, Dominique Daniago hosted a small party at her house in Wilmington, Delaware. At that party were her brother, Michael Potts, and his friend, Kyle Poplos. At around 1:00 a.m., the three, along with several other guests, were sitting outside Ms. Daniago's front porch and drinking when they were ap-

---

1. Del.Code Ann. tit. 11, § 612.

2. Del.Code Ann. tit. 11, § 1447A.

3. Del.Code Ann. tit. 11, § 604.

proached by two men, later identified as the defendant Wynn and Andres Colon ("Colon"). Wynn and Colon asked if they could drink with the group, but were told no. One of the guests on the porch then made a derogatory remark about President Obama, and a heated argument broke out between the two groups. As Wynn and Colon left, one of Ms. Daniago's guests overheard one of the two men say "We'll be back." After Wynn and Colon departed, Ms. Daniago and her guests went inside her home.

About 15–20 minutes later, Wynn and Colon returned to Ms. Daniago's house with a third (unidentified) person. Upon their return, Ms. Daniago came outside and tried to defuse the situation by telling Wynn and his friends that she did not want any problems at her home, and by asking them to leave. During that conversation, the other guests inside Ms. Daniago's house came back outside onto the porch, and another argument broke out between the two groups. At that point, Wynn pulled out a handgun and fired three shots at the group on the porch. One of the shots struck Potts in the chest and another shot struck Poplos in the hand. Wynn, Colon, and the third unidentified man then fled.

Shortly thereafter, the police received a report of a white Acura that had been seen fleeing from the scene of the shooting. Wilmington Police Officers Cavanaugh and Colmery were parked in the parking lot of the Concord Professional Center when they saw a car drive by that matched that description[4] Upon conducting a felony traffic stop, the police found Wynn and Colon inside the car[5] and saw a chrome handgun under the front passenger seat. Wynn and Colon were immediately arrested.

After being identified as the shooter in a photo lineup, Wynn was indicted on two counts of Assault in the First Degree,[6] five counts of Reckless Endangering in the First Degree,[7] seven counts of PFDCF,[8] Possession of a Deadly Weapon by a Person Prohibited,[9] and Criminal Impersonation.[10] Wynn later pled guilty to two counts of Assault in the Second Degree,[11] two counts of PFDCF, and one count of Reckless Endangering in the First Degree. During the May 24, 2010 plea colloquy, the following exchange occurred:

THE COURT: Do you understand that any recommendation that the pre-sentence report makes, that the prosecutor makes, that your attorney makes at the time of sentencing would be just that, recommendations, and the court can sentence you up to the maximum penalties associated with each of these offenses which, combined . . . is 71 years, . . . and that's what the court can impose at the time of your sentencing, do you understand that?

WYNN: Yes.

The trial judge then confirmed Wynn's understanding about his potential sentence, as follows:

THE COURT: The State has indicated at the time of sentencing that it's going to recommend that you be sentenced to

---

4. Officers Cavanaugh's and Colmery's first names do not appear anywhere in the record.

5. Wynn had initially given the police a false name and birthday.

6. Del.Code Ann. tit. 11, § 613.

7. Del.Code Ann. tit. 11, § 604.

8. Del.Code Ann. tit. 11, § 1447A.

9. Del.Code Ann. tit. 11, § 1448.

10. Del.Code Ann. tit. 11, § 907.

11. Del.Code Ann. tit. 11, § 612.

eight years in jail followed by probation for these offenses, do you understand that?

WYNN: Yes.

THE COURT: Do you understand, again, the court is not bound by that recommendation, and can sentence you to the maximum penalties?

WYNN: Yes.

Wynn was sentenced on August 27, 2010. At the sentencing hearing, the judge determined that two aggravating circumstances justified departure from the SENTAC Benchbook guidelines. First, the judge concluded that a sentence according to the SENTAC Benchbook guidelines would "unduly depreciate the seriousness of his offense," because Wynn had returned to Ms. Daniago's house "with the intent of injuring or killing someone [there]," and he had fired his gun "into a helpless, unarmed group of people who just wanted to be left alone...." Second, the judge found that Wynn had failed to accept responsibility for his actions, because he tried to minimize his role in the shooting by giving the investigating services officer a "preposterous story" of the events that was wholly uncredible.

Based on these aggravating circumstances, Wynn was sentenced to a total of thirty-one years of incarceration, suspended after twenty-four years for a period of probation, as follows: for each of the two Assault in the Second Degree counts, five years at Level V incarceration, suspended after eighteen months for two years at Level IV supervision, suspended after six months for eighteen months at Level III supervision; for each of the two PFDCF counts, ten years at Level V incarceration; and for the Reckless Endangering in the First Degree count, one year at Level V incarceration, with no probation to follow.

### Wynn's Contentions

On appeal, Wynn claims that the Superior Court misunderstood and misapplied the applicable SENTAC Benchbook guidelines, because the sentencing judge quadrupled the minimum mandatory time and tripled the State's recommended penalty. Wynn concedes that his sentences are within the maximum statutory penalty, but argues that the sentencing judge: first, failed to consider mitigating evidence regarding his remorse for his actions and also failed to account for the victim's own involvement in "instigating the altercation that ultimately led to the shooting;" second, made incorrect factual conclusions about his criminal history, educational, and vocational background; and third, erroneously enhanced the sentence on the two PFDCF charges that were not the lead or primary charges.

### Standard of Review

This Court's appellate jurisdiction to review a criminal sentence is limited to where a defendant has alleged a basis for: "unconstitutionality; factual predicates which are either false, impermissible, or lack minimum indicia of reliability; judicial vindictiveness, bias, or sentencing with a 'closed mind;' and any other illegality." [12] review only to determine whether the sentence imposed is within the statutory limits prescribed by the legislature.[13] As we have recognized, "there is no constitutional or statutory right in Delaware to appeal a criminal punishment on the sole basis that it deviates from the

12. *Siple v. State*, 701 A.2d 79, 83 (Del.1997).

13. *Id.; see also Mayes v. State*, 604 A.2d 839, 842 (Del.1992) ("Appellate review of a sentence generally ends upon a determination that the sentence is within the statutory limits prescribed by the legislature.").

SENTAC sentencing guidelines."[14] Thus, for this Court "[t]o disturb a sentence on appeal, there must be a showing either of the imposition of an illegal sentence or of abuse of the trial judge's broad discretion."[15]

### Mitigating Evidence Argument

■ Wynn first claims that the sentencing judge erred by failing to consider the fact that he had apologized during the sentencing hearing, and to account for the victim's own involvement in "instigating the altercation that ultimately led to the shooting." The sentencing judge, however, was not required to credit Wynn's apology or Wynn's version of the shooting, because the judge found that Wynn was not credible. Indeed, the sentencing judge noted that after Wynn was incarcerated, he attempted to persuade a friend to convince his two shooting victims to recant their previous statements.

The judge also found it significant that Wynn "tr[ied] to minimize [his] role in [the shooting] by pretending to shoot in self-defense." Specifically, the sentencing judge found that Wynn's version of the shooting—wherein he claimed that one of the guests on the porch had instigated the shooting by pulling out a gun first, and that he had merely "reacted"—was a "preposterous story" that "reek[ed] with improbabilities [and] impossibilities." The sentencing court, therefore, was not required to consider any mitigation evidence, because Wynn's "mitigation" account was "contradicted by the evidence," and his apology was found to be insincere.

### Incorrect Factual Conclusions Argument

Wynn next claims that the sentencing judge improperly considered his subsequent arrest for an armed robbery that had occurred one week before the shooting; and made erroneous conclusions about his academic and vocational achievements when determining the sentence. Those arguments, however, are not supported by the record. The sentencing hearing transcript shows that when the judge asked about Wynn's subsequent arrest for armed robbery, defense counsel responded that Wynn had denied involvement in that crime and that those charges had been dismissed. No further reference to that arrest was made, and there is no evidence that the sentencing court relied on that arrest in its sentencing decision. Rather, the court based its decision on two aggravating circumstances, namely, undue depreciation of the gravity of the offense and Wynn's lack of responsibility.

As to Wynn's educational and vocational background, the record reflects that defense counsel failed to object to the trial judge's recitation of Wynn's vocational history at sentencing. Nor has Wynn pointed to any record evidence showing that the trial judge "misinterpreted" his "achievements." But, even assuming that the sentencing judge mistakenly recited Wynn's educational background, Wynn has not shown any resulting prejudice. Specifically, Wynn has not articulated how his background would have affected the sentencing decision, given the two aggravating circumstances justifying enhancement.

### Enhanced Sentence for PFDCF Charges

■ Wynn's final argument is that the Superior Court erroneously enhanced the sentence on the PFDCF charges, because they were not the primary or lead charge. He claims that because Assault was the

---

14. *Siple v. State,* 701 A.2d at 83.

15. *Weber v. State,* 655 A.2d 1219, 1221 (Del. 1995).

"predicate offense" for which the PFDCF was based, the two Assault in the Second Degree charges remained the primary charges. Therefore, it was error for the sentencing court to enhance the sentence for the PFDCF charges, because it should have enhanced the sentence for the assault charges.

In response, the State argues that the PFDCF charges were the "lead" charges, because those charges were Class B felonies that carried a greater maximum sentence than the Assault in the Second Degree charges, which were Class D felonies. The State also contends that the sentencing judge "believed the weapons charges to be significant" when the judge stated: "Gun violence is rampant in this city, as it is elsewhere, and something needs to be done so as to protect citizens ... from random senseless gunfire that they did nothing to deserve."

Here, each Assault in the Second Degree conviction resulted in five years of incarceration, suspended after eighteen months for six months at Level IV supervision, followed by eighteen months of probation. For each PFDCF conviction, Wynn received ten years of incarceration. Under the SENTAC Benchbook guidelines, the presumptive sentence for each PFDCF conviction is three years, which is the minimum mandatory sentence required by statute.[16] The statutory sentencing range for a PFDCF charge (Class B felony), however, may be up to twenty-five years of incarceration.[17]

The SENTAC Benchbook guidelines provide that:

When an offender is sentenced on multiple charges, only the primary charge should carry an enhanced penalty based upon prior criminal history. All other charges should receive penalties consistent with or lower than the presumptive sentence for the offense, unless aggravated by some specific factor to the individual charge. In this way, judges can impose serious penalties when necessary and construct meaningful probation sentences to follow incarceration.[18]

As these guidelines acknowledge, it is within the sentencing judge's discretion to impose a more severe penalty where the circumstances justify such a result. Moreover, as Wynn concedes, the SENTAC guidelines are not binding upon the Superior Court.

We need not address whether the sentencing judge erred in determining which charges constituted the "lead" charges, because the judge enhanced the sentence for the PFDCF charges based on the serious nature of Wynn's conduct. The judge found that the initial encounter between Wynn and the party guests was "trivial" and "was something that ... should have been forgotten five minutes after it was over." But instead, Wynn "went home and armed [himself]" and returned to the party "with the intent of injuring or killing someone at that party." He then ignored the partygoers' attempts to defuse the situation and "responded by firing into a helpless, unarmed group of people...." On these facts, the sentencing judge did not abuse his discretion in enhancing the sentence for the PFDCF charges.

---

16. Del.Code Ann. tit. 11, § 1447A(b) ("A person convicted under subsection (a) of this section shall receive a minimum sentence of 3 years at Level V, notwithstanding the provisions of [11 *Del. C.*] § 4205(b)(2)....").

17. Del.Code Ann. tit. 11, § 4205(b)(2) ("The term of incarceration which the court may impose for a felony is fixed as follows: ... (2) For a class B felony not less than 2 years up to 25 years to be served at Level V.").

18. SENTAC Benchbook guidelines at 20.

*Conclusion*

The record reflects that Wynn was fully aware that the Superior Court was not bound by the State's sentence recommendations, and that he had been twice advised that by pleading guilty, he faced a maximum sentence of seventy-one years of incarceration. The sentencing judge imposed harsher sentences than those recommended by the SENTAC Benchbook guidelines based on two aggravating circumstances. Those sentences were neither illegal, nor an abuse of discretion.

Therefore, the judgments of the Superior Court are affirmed.